TRANSCONTINENTAL GAS PIPE LINE CORPORATION, PLAINTIFF-APPELLANT, v. THE DEPARTMENT OF CONSERVATION AND ECONOMIC DEVELOPMENT OF THE STATE OF NEW JERSEY, DEFENDANT-RESPONDENT.

NEW JERSEY TITLE INSURANCE ASSOCIATION, INTERVENOR. (BY LEAVE OF COURT.)

Argued April 21, 1964—Decided July 7, 1964.

*Mr. Russell E. Watson* argued the cause for plaintiff-appellant (*Messrs. R. E. & A. D. Watson,* attorneys).

*Mr. Avrom J. Gold* and *Mr. Alan B. Handler,* Deputy Attorneys General, argued the cause for defendant-respondent (*Mr. Arthur J. Sills,* Attorney General of New Jersey, attorney).

*Mr. James L. R. Lafferty* argued the cause for intervenor (*Messrs. Steelman, Lafferty, Rowe & McMahon,* attorneys).

The opinion of the court was delivered by

HANEMAN, J. This case involves a dispute over the title to some 447 acres of land in the Borough of Carlstadt (Borough).

Municipal taxes were levied and assessed against the lands here involved by the Borough. It became the purchaser of a number of tax sale certificates at several sales for nonpayment of these taxes. On December 31, 1947, the Borough undertook a strict foreclosure action of the certificates in the then Court of Chancery, which eventuated in a final judgment entered February 9, 1949. The State of New Jersey was not a party to those proceedings. The lands were sold by the Borough to Plank Development Corporation (Plank) on August 17, 1949. Hiram Blauvelt became vested with title through conveyances by Plank in 1951 and 1953. At the request of Plank the Borough filed a complaint on October 1, 1957 under the In Rem Foreclosure Act for reforeclosure. *N. J. S. A.* 54:5–104.72 to 104.74. Notice of that suit was sent to the Attorney General on November 20, 1957 (*N. J. S. A.* 54:5–104.43) and received by him on November 21, 1957. The State entered no appearance in the proceedings.

Final judgment was entered January 17, 1958, providing in part:

"* * * all persons having a vested or contingent title or interest in or lien or claim upon or against said lands, including the State of New Jersey and any agency and political subdivision thereof, * * * be barred of the right of redemption and be foreclosed of all prior or subsequent alienations and descents of said lands and encumbrances therein, and that an absolute and indefeasible estate of inheritance in fee simple in said lands be vested in Hiram B. D. Blauvelt, his heirs, representatives and assigns, * * *."

Thereafter, by *mesne* conveyances, plaintiff became vested with title by deed dated February 4, 1963.

On January 2, 1963, upon plaintiff's application, defendant leased the lands to it. The lease contained the following proviso:

"* * * provided, that if during the term of fifteen (15) years, portions of the lands hereinabove described are determined either by mutual agreement or by final judgment of a Court of competent jurisdiction not to be owned by the State, then as to such portions this lease shall be revised and modified to the end that the annual rentals shall be reduced * * *."

Plaintiff thereafter filed the present action in the Law Division, designated in the complaint as a "Declaratory Judgment Action." The demand in said complaint reads:

"Wherefore, plaintiff demands that this Court construe the lease referred to in paragraphs 11 and 12 of this complaint, and the said foreclosure and In Rem Reforeclosure actions and the judgments respectively entered therein * * * and construe the statutes and any judgments rendered thereunder insofar as they affect the title of the State of New Jersey and determine and declare that the State of New Jersey has no vested or contingent title or interest in said lands by reason of said lands being under tidewater."

Defendant filed an answer containing nine separate defenses. Included was the plea that

"The lands described in the lease are the property of the State of New Jersey by virtue of being tidelands, and the judgment of foreclosure and reforeclasure as alleged in the complaint cannot serve to deprive the State as the owner of the paramount title."

Paraphrased, the defendant alleged that where it has paramount title the State has not waived its immunity from suit in the *In Rem* action.

Plaintiff's motion for summary judgment was denied. That motion sought an adjudication that the judgment in the *In Rem* reforeclosure was binding on the State and extinguished whatever interest the State might have had in said lands, including its paramount title based on the lands' being tideflowed.

The Appellate Division granted plaintiff's motion for leave to appeal, and this court certified the case on its own motion prior to argument there.

The basic issue projected by the briefs is whether the State of New Jersey, by virtue of the In Rem Act, *N. J. S. A.*

54:5–104.29 *et seq.*, waived its sovereign immunity to suit where it has a proprietary interest in the lands being foreclosed. A corollary question is whether the above judgment extinguished whatever title the State had to such lands.

Plaintiff bottoms its argument that the State did so waive its immunity upon four sections of the In Rem Act, *N. J. S. A.* 54:5–104.41, 104.43, 104.64 and 104.65.

*N. J. S. A.* 54:5–104.41 reads:

"The plaintiff shall file a copy of the complaint in the offices of the municipal tax collector, the county recording officer and the Attorney-General of the State of New Jersey."

*N. J. S. A.* 54:5–104.43 reads:

"The copy of said complaint filed in the office of the Attorney-General of the State of New Jersey shall be notice to the State of New Jersey, including any agency of the State, and any political subdivision thereof having an interest in or lien upon the land to be affected, that such action has been instituted, in rem, against said land."

*N. J. S. A.* 54:5–104.64 reads:

"(a) The judgment shall give full and complete relief, in accordance with the provisions of this act, and in accordance with any other statutory authority, to bar the right of redemption, and to foreclose all prior or subsequent alienations and descents of the lands and encumbrances thereon, and to adjudge an absolute and indefeasible estate of inheritance in fee simple in the lands therein described, to be vested in the plaintiff.

(b) Such judgment shall be binding and final upon all persons having a vested or contingent title or interest in or lien or claim upon or against said lands, including the State of New Jersey, and any agency and political subdivision thereof, and their heirs, devisees and personal representatives, and their, or any of their heirs, devisees, executors, administrators, grantees, assigns or successors in right, title or interest, notwithstanding any infancy or incompetency of such person or persons, and upon all other persons, their heirs, devisees and personal representatives and their or any of their heirs, devisees, executors, administrators, grantees, assigns or successors in right, title or interest."

*N. J. S. A.* 54:5–104.65 reads:

"Upon the recording of a certified copy of such judgment in the office of the county recording officer, the plaintiff shall be seized of an estate in fee simple, in the lands described therein, absolute and free and clear of all liens and encumbrances, in accordance with the terms of said judgment."

In construing the In Rem Act as to the issue raised here we must place it in its historical context. From 1918 to 1947 the holder of a tax sale certificate had available two methods of barring the right of redemption of parties with an interest in the tax delinquent land. The tax sale law provided a method, *R. S.* 54:5–77, 78, under which the holder of a certificate could give notice to interested persons of their right to redeem. If there was no redemption within the time provided by the statute and expressed in the notice, or if there was no redemption within 20 years after the certificate holder had entered into open and continuous possession, the right of redemption was barred. This proceeding was sparingly if ever used because of the difficulties involved in obtaining good title thereunder. The act provided as well for a strict foreclosure action in the then Court of Chancery. *R. S.* 54:5–85 *et seq.* For many years the latter proceeding had generally been employed because of the ability to thus obtain an undoubted marketable title.

The strict Chancery foreclosure became the subject of a great amount of criticism because of the length of time required in and the costliness of the proceeding. Much discussion ensued in an attempt to find a constitutional substitute therefor, under which it would be possible for the certificate holder to obtain marketable title. The New Jersey League of Municipalities and the New Jersey Taxpayers Association took prominent parts in advocating such a change.

The New Jersey Commission on State Tax Policy, in its "First Report (1946) to the Governor and the Legislature," in discussing the subject of tax foreclosures at *p.* 41, quoted the following from the report of the New Jersey Taxpayers

Association, entitled "About the New Jersey Taxpayers Association":

> "The excessive cost of foreclosing tax delinquent property under the present law imposes a serious problem upon municipalities which would like to rid themselves of burdensome dead-wood realty, especially unimproved vacant land or lots whose market value does not justify the municipality instituting costly foreclosure proceedings for their sale. Remedial legislation should be enacted simplifying the procedure and reducing the high cost of these sales as a matter of enlightened public policy in the vital interest of the municipality and its taxpayers."

In an effort to provide such a more expeditious and less expensive manner for municipal liquidation of tax sale certificates, the Legislature enacted an In Rem Act in 1947, *L.* 1947, *c.* 333. There were many patent shortcomings in this statute and it was repealed, *L.* 1948, *c.* 96 (the present In Rem Act). The bill which became the present In Rem Act, *S.* 260, 1948, contained the following statement:

> "This bill is a revision of P. L. 1947, c. 333. It is designed to provide a strictly in rem procedure, and to simplify the proceedings under the 1947 act and to make it more adaptable to the needs of municipalities. It is submitted as a revision of the 1947 act in order to avoid the awkwardness and uncertainty which might arise through an attempt to correct the defects of the 1947 act by way of amendment and supplement. This bill is sponsored by the New Jersey state league of municipalities and by the New Jersey association of municipal attorneys."

The question of the State's immunity from suit in tax foreclosures was decided in the State's favor in *Irvington v. Ollemar*, 128 *N. J. Eq.* 402 (*Ch.* 1940, affirmed *sub. nom. Irvington National Bank v. Geiger*, 131 *N. J. Eq.* 189 (*E. & A.* 1941)), where the plaintiff sought to foreclose a tax sale certificate by strict foreclosure in Chancery, joining the State which held a lien for transfer inheritance taxes against the property. In dismissing the suit against the State the court held that *R. S.* 2:61–1, which provided:

> "Whenever the state of New Jersey has any lien or encumbrance upon any lands and a suit arising out of any previous lien or encum-

brance on such lands is brought, the lien or encumbrance of the state or its priority may be brought in question and definitely settled by any court having jurisdiction of the subject matter of the suit,"

was inapplicable to a suit to foreclose a tax sale certificate. The basis of that decision was the firmly established doctrine that the State may not be sued in its courts without its consent. See *Taylor v. New Jersey Highway Authority,* 22 *N. J.* 454, 466, 62 *A. L. R. 2d* 1211 (1956).

By *L.* 1947, *c.* 416, *N. J. S.* 2A:45–1, the Legislature thereafter provided:

"Whenever the state of New Jersey has any lien or encumbrance upon real property and an action arising out of a prior lien or encumbrance on the same real property is instituted to foreclose, strictly foreclose, or re-foreclose the said prior lien or encumbrance, or otherwise to affect the lien or encumbrance of the state, or when such action is brought to foreclose the equity of redemption of the real property after a sale for unpaid taxes or other municipal liens, the lien or encumbrance of the state and its priority may be brought in question and definitely settled by the court having jurisdiction of the matter."

The Legislature as well enacted *L.* 1947, *c.* 349, *N. J. S. A.* following 2A:45–5, a remedial statute, which provided:

"1. Whenever any municipality, prior to June fourteenth, one thousand nine hundred and forty-one, shall have instituted a suit in equity in the Court of Chancery to foreclose the right of redemption from a tax sale upon a certificate of tax sale held by the municipality, and shall have thereafter obtained a final decree therein vesting title to the premises described in such decree in the municipality, and such premises are or may be subject to a lien or encumbrance of the State of New Jersey, which was in existence but subsequent to the lien or encumbrance of the municipality at the time of the institution of the foreclosure suit, the municipality may institute a proceeding in the Court of Chancery to bar and extinguish such lien or encumbrance of the State."

It is plain that prior to the enactment of the In Rem Act the State waived its immunity to suit in a tax sale certificate strict foreclosure and consented to being joined as a defendant only to the extent that it permitted the priority of a "lien or

encumbrance" held by it affecting the subject real property to "be brought in question and definitely settled," with the resulting possibility of having the lien or encumbrance extinguished. The prohibition against joining the State where its interest in the realty was by way of title rather than by lien or encumbrance continued unabated and unaffected. It is against the foregoing historical backdrop that we must examine the language of the In Rem Act, *N. J. S. A.* 54:5–104.29 *et seq.,* to ascertain whether the Legislature intended thereby to extend the waiver of immunity theretofore applicable to liens and encumbrances, to include instances where the interest of the State is by way of title.

The provisions of *N. J. S. A.* 54:5–104.41, 104.43 and 104.64 by implication authorize the joinder of the State in an *In Rem* proceeding. The only portion of the statute which could serve as an implied consent to a general waiver of immunity in such an action is *N. J. S. A.* 54:5–104.64(b), which reads in part:

"Such judgment shall be binding and final upon all persons having a vested or contingent title or interest in or lien or claim upon or against said lands, including the State of New Jersey, \* \* \*."

Admittedly, as stated in *Taylor, supra,* 22 *N. J.,* at p. 470, the "doctrine of governmental immunity from suit is currently in disfavor" and "express or implied authority to sue and be sued should generally be considered as sufficient to enable suits in tort as well as contract." However, where the State is not expressly or by necessary implication, included within the terms of a statute, it should be clear from the nature of the mischief to be reached, or the language used, that the government itself was in the contemplation of the Legislature, before a court would be authorized to put a construction on a statute which would affect its rights. *Trustees for Support of Public Schools v. Inhabitants of City of Trenton,* 30 *N. J. Eq.* 667, 683 (*E. & A.* 1879). Where, as here, the State's title to realty is brought in question, the statute is to be strongly construed in favor of the State. *Cf. Bergen*

*County v. McConnell,* 58 *N. J. Super.* 495 (*App. Div.* 1959), certif. denied 31 *N. J.* 554 (1960).

The In Rem Act provides that the municipality

"may, from time to time, determine, by resolution, to foreclose any of the tax sale certificates held by it, by the summary proceedings In Rem * * *. Such resolution shall list the lands against which such proceedings shall be instituted. Such list, to be known as the 'tax foreclosure list,' shall be prepared and certified by the tax collector. * * *" *N. J. S. A.* 54:5–104.35.

The tax foreclosure list is required to include sundry identifying items relating to the tax certificate, a description of the land as it appears on the tax duplicate and tax certificate, the amount of taxes required to be paid for redemption, and

"The name of the person appearing as the owner of the land to be affected by the foreclosure proceedings as it appears on the last tax duplicate of the municipality, or the word 'unknown' if no name appears thereon." *N. J. S. A.* 54:5–104.35(i).

*R. R.* 4:82–7(a) provides that the complaint for foreclosure shall contain

"(1) The tax foreclosure list;
(2) The name of the person or one of the persons who, according to the records in the office of the county recording officer, appears as a transferee or purchaser of title to the land to be affected by the tax foreclosure proceedings, and the book and page or date and instrument number of the instrument by which such person acquired title; or the word 'unknown' if no such person can be discovered by a search of the records of ownership in the county recording officer's office for a period of 60 years next preceding the preparation of the tax foreclosure list."

By *N. J. S. A.* 54:5–104.41 and 104.43, every complaint in an *In Rem* Action is to be filed in the office of the Attorney-General, and such filing shall be notice to the State that an action has been instituted against the land. The service is not limited to instances where the State has an interest. The service of the complaint upon the State, therefore, discloses the name of the person appearing as the owner on the last tax

duplicate and the name of the person who appears according to the records in the office of the county recording office as a transferee or purchaser of title to the land being foreclosed (record titleholder). Unless the State were listed upon the tax duplicate as an owner or appeared in the county recording office as the record title owner it would have no actual notice under *N. J. S. A.* 54:5–104.43 that its paramount title was being brought into question by the foreclosure proceedings.

■ There are no muniments of title to the vast and extensive tide-flowed lands to which the State has title, as title is founded upon and ascertained by the location of the mean high-water line. See *e. g. Bailey v. Driscoll*, 19 *N. J.* 363 (1955); *Schultz v. Wilson*, 44 *N. J. Super.* 591 (*App. Div.* 1957), certif. denied 24 *N. J.* 546 (1957); *State by State Highway Com'r v. Maas & Waldstein Co.*, 83 *N. J. Super.* 211 (*App. Div.* 1964). Were plaintiff's construction of the In Rem Act to be adopted, the State would be obliged first to ascertain the general location of the lands listed in every complaint. Then it would have to determine the exact location, as only in such manner could it be determined whether the lands were below the mean high water line. This would necessitate an extensive investigation of the topography of the land and would in many instances involve title searches and field surveys. Only with such research and information could a reasoned conclusion be reached as to whether title to State lands was in jeopardy. It is self-evident that such a course of conduct in the multitude of *In Rem* foreclosures annually undertaken would be a monumental and costly undertaking. It is unbelievable that the Legislature intended to cast this burden upon the State at the risk of losing title to valuable parcels of realty, especially as it would be reasonable to assume that there would be no municipal assessments upon such tax-exempt State lands. We conclude, therefore, that the State did not waive its immunity to suit where it has paramount title to the lands being foreclosed.

■ The language of *N. J. S. A.* 54:5–104.64(b), *supra*, is quite significant in this connection and comports with the.

foregoing conclusion. Provision is there made for two categories of persons whose interest in the realty is subject to extinction, (1) those holding a vested or contingent title to the lands, and (2) those having something less — a "lien or claim." The rule of *ejusdem generis* applies to the word "claim." That is, in the construction of statutes when general words follow specifically named things of a particular class, the general words must be understood as limited to things of the same class, or at least of the same general character. *Denbo v. Moorestown Twp.*, 23 *N. J.* 476 (1957). "Claim" then partakes of the nature of "lien"—or as stated in *N. J. S.* 2A:45–1, "lien or encumbrance."

It is to be noted that the statute does not read "all persons *including the State of New Jersey* having a vested or contingent title or interest in or lien or claim upon or against said lands" but rather that the inclusion of the State follows the words "lien or claim." The phrase "including the State of New Jersey" modifies the words "lien or claim." Had it been intended to extend the waiver of State immunity to suits where the State has title to the subject property it would have been a simple matter to have aptly expressed that purpose by directly appending the including phrase directly to "persons" as above noted. This conclusion is consistent with the sole avowed purpose of enacting the In Rem Act as stated above, *i. e.*, the elimination of the time and expense incident to a strict foreclosure in Chancery. The objective of the statute was to furnish a more efficient method of obtaining the remedy available in the Chancery action—not to expand that remedy. Thus the In Rem Act was not intended to extend the waiver of the State immunity provided by *N. J. S.* 2A:45–1 but rather to incorporate that same waiver of immunity in proceedings under the In Rem Act.

Considering the only purpose of the In Rem Act and the language of *N. J. S. A.* 54:5–104.64(b), we find there not only no express words waiving the immunity of the State from suit in an *In Rem* foreclosure where its interest in the realty is by way of title, but also no words which by necessary impli-

cation would lead to such a conclusion. Therefore, plaintiff's judgment in the reforeclosure under the In Rem Act does not affect whatever paramount title the State has in the lands involved. It follows that plaintiff's motion for judgment in this action was properly denied.

Affirmed.

*For affirmance* — Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANE-MAN—7.

*For reversal*—None.