99 N.J. Super. 103 (1968)
238 A.2d 695
DAVID J. GOLDBERG, STATE COMMISSIONER OF TRANSPORTATION, NEW JERSEY STATE DEPARTMENT OF TRANSPORTATION AND STATE OF NEW JERSEY, PLAINTIFF,
v.
LAWRENCE R. TRAVER, TAX COLLECTOR OF THE TOWNSHIP OF LIVINGSTON, TOWNSHIP OF LIVINGSTON, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANTS. DAVID J. GOLDBERG, COMMISSIONER OF TRANSPORTATION, NEW JERSEY STATE DEPARTMENT OF TRANSPORTATION AND STATE OF NEW JERSEY, PLAINTIFFS,
v.
MILAN H. HARTZ, TAX COLLECTOR OF THE TOWNSHIP OF MILLBURN, AND TOWNSHIP OF MILLBURN, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided January 24, 1968.
*105 Mr. David A. Biederman, Deputy Attorney General, for plaintiffs (Mr. Arthur J. Sills, Attorney General).
Mr. Louis Bort for defendants Lawrence A. Traver, Tax Collector of the Township of Livingston, and Township of Livingston.
Mr. Harold M. Kain for defendants Milan H. Hartz, Tax Collector of the Township of Millburn, and Township of Millburn.
MINTZ, J.S.C.
These causes, although not formally consolidated for hearing, were argued at the same time, and by consent of the parties will be considered as if presented on cross-motions for summary judgment. The State of New *106 Jersey and the New Jersey Department of Transportation (hereinafter the Department) seek to enjoin permanently the Townships of Livingston and Millburn from selling for tax arrears under N.J.S.A. 54:5-19 certain lands conveyed to or condemned by the State for highway purposes. Such lands were acquired by the State or Department in 1966, but prior to June 9, 1966. The parcels in Livingston Township were acquired by the State by conveyance, and the parcel in Millburn Township through condemnation.
Significance is attached by the Department to the date of June 9, 1966 because it was on that date that the Supreme Court rendered its decision in City of East Orange v. Palmer, 47 N.J. 307 (1966), affirming in part the trial court. The trial court had held that the State was obliged to pay the City of East Orange property taxes on land acquired by purchase for the time between the date of acquisition of title to the end of the full tax year following the last assessment against a private owner. City of East Orange v. Palmer, 82 N.J. Super. 258 (Ch. Div. 1964). The State's appeal was certified to the Supreme Court on its own motion. The Supreme Court extended the trial court's ruling and, performing a law-creating function, held that the State and the Highway Authority were liable to East Orange for real property taxes for the balance of the tax year in which the State acquired properties regardless of whether the acquisition was by conveyance or condemnation. These rulings upset an administrative practice long acquiesced in by municipalities, that any obligation for municipal property taxes ceased upon the day title passed to the State for such land either through voluntary deed or condemnation.
On the oral argument it was agreed that the two issues to be resolved in these proceedings are:
(1) Whether the State and Department are liable to the municipalities for the balance of the real property taxes assessed for the year 1966 on properties acquired by the State in 1966 but prior to June 9, 1966.

*107 (2) If so, may the respective municipalities sell the State-held properties for the 1966 tax arrears pursuant to
N.J.S.A. 54:5-19.
Livingston Township proposes a tax sale for four parcels which the State obtained by voluntary conveyances in January and February 1966 for the Route I-280 project. Millburn Township proposes a tax sale for land condemned by the State in early 1966 for Route I-78. Both townships allege the State is obliged under City of East Orange v. Palmer, supra, to pay the balance of the 1966 assessed taxes allocable to the period after the respective titles passed to it, and the municipalities seek to recover those revenues through tax sales pursuant to N.J.S.A. 54:5-19. The State and Department contend that the Supreme Court decision in City of East Orange v. Palmer does not affect properties acquired by the State prior to June 9, 1966.
Livingston Township argues that as to properties voluntarily conveyed to the State before June 9, the balance of 1966 taxes from the acquisition date are due the municipality by virtue of the trial court judgment in City of East Orange v. Palmer. Hence, in Livingston's view no issue of retrospective effect of the Supreme Court decision is raised. It urges that the Chancery Division opinion rendered on February 1, 1964 served as unmistakable notice to the State of its future balance-of-the-year tax liability on voluntarily conveyed lands, and requires other trial courts which thereafter would hear similar municipal claims arising from later voluntary acquisitions to respect the holding as stare decisis on the legal principle involved.
While trial court precedent is not to be considered lightly, in the absence of an appellate authority in New Jersey this court is not compelled to follow it. Ferraro v. Ferro Trucking Co., 72 N.J. Super. 519 (Law Div. 1962). In any event, stare decisis is a principle of adherence for the sake of certainty and stability to precedents once established. But it applies primarily to decisions which invite reliance and on the basis of which men order their affairs, *108 e.g., in the field of contract or property rights. Smith v. Brennan, 31 N.J. 353, 361 (1960). In the instant situation the trial court opinion in City of East Orange v. Palmer cannot be said to invite reliance, for the court squarely recognized the inconclusiveness of its judgment when it said:
"* * * I mention an appeal because, in the absence of an appellate ruling in New Jersey fixing the date on which the tax exemption of the State takes effect when property has been acquired by deed, and with many parcels of real estate being purchased, it seems desirable to have a more definitive answer than can be given at the trial level. * * *" (at p. 268)
Hence, that decision need not be considered controlling precedent.
The Supreme Court decision of June 9, 1966 is admittedly controlling with respect to State or Department acquisitions after that date. The Supreme Court was not presented with the question of retrospective application of its decision to acquisitions of parcels before June 9, 1966 and did not pass on it. Thus, it is for this court to adjudge whether the holding in City of East Orange v. Palmer should reach back to State acquisitions made between January 1 and June 9, 1966.
The present situation resembles the pattern of a leading tort case, Molitor v. Kaneland Community Unit Dist. No. 302, 18 Ill.2d 11, 26-29, 163 N.E.2d 89, 96-98, 86 A.L.R.2d 469 Sup. Ct. (1959), certiorari denied, 362 U.S. 968, 80 S.Ct. 955, 4 L.Ed.2d 900 (1960). There an appellate court overruled a judicial precedent, granted retroactive relief to the instant plaintiff and announced prospective relief would be forthcoming to all claims arising after the date of the appellate decision. All similar claims arising in the interim period leading to the appellate ruling were barred relief. See also Molitor v. Kaneland Community Unit Dist. No. 302, 24 Ill.2d 467, 182 N.E.2d 145 (Sup. Ct. 1962). Our situation only differs from the "selective retrospective application" of Molitor, in that the New *109 Jersey Supreme Court, unlike the Illinois Supreme Court, left open the degree, if any, of retrospective application available. See Keeton, "Creative Continuity in the Law of Torts," 75 Harv. L. Rev. 463, 490-492 (1962), for a critique of the Molitor method.
The townships urge that under Fox v. Snow, 6 N.J. 12 (1950), a change in the established law by judicial decision is retrospective. It is to be observed that City of East Orange v. Palmer did not overrule by judicial decision an established law. Rather, it clarified the then unsettled state of the law. Yet it would appear that even in such a situation, the rules of retrospective application of overruling judicial decisions should govern.
Recently, however, in State v. Johnson, 43 N.J. 572 (1965), affirmed Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966), the Supreme Court broadened the concepts governing retrospective and prospective application. It there said:
"* * * contemporary judicial decisions announcing a new rule of law are the product, not only of a re-evaluation of abstract principles of justice, but also of practical considerations of current economic, social, and political realities, and the effect of the rules announced in those decisions upon current institutions. * * * In determining whether to give retroactive effect to a new rule of law, a court's consideration should be correspondingly broad." (at p. 583)
That opinion (at p. 583) also quotes Justice Cardozo's apposite observation:
"* * * I feel assured, however, that * * * [the extent of retrospective application of a new rule], wherever it shall be, will be governed, not by metaphysical conceptions of the nature of judge-made law, nor by the fetich of some implacable tenet, * * * but by consideration of convenience, of utility, and of the deepest sentiments of justice." Cardozo, The Nature of the Judicial Process, pp. 148-149 (1921).
In deciding whether to give a new rule retroactive effect, a court to which the issue has been properly presented *110 should first identify the purpose of the new rule, next determine on balance those purposes served by general retroactive application of the new rule, and finally decide whether these purposes will be promoted by retroactive application of the new rule in the particular case before it. See Note, "Prospective Overruling and Retroactive Application in the Federal Courts," 71 Yale L.J. 907, 942 (1962).
In City of East Orange v. Palmer, the Supreme Court set forth the policies motivating its decision. It there said:
"The tight relation between the raising of necessary governmental revenues and the taxable properties on the rolls is most obvious from this panoramic view of the New Jersey system. The annual finances of each taxing entity sharing in the municipal levy are dependent upon tax revenues computed on the basis of the taxable real property on the assessor's list. Mid-year cancellation of tax liability by reason of a property so listed becoming exempt during the year would result, as in the present situation of East Orange, in a major dislocation and an unfair burden to the remaining taxpayers of the municipality, for the tax revenues lost thereby to the municipality itself must be made up in the end by those taxpayers. * * *
But more important, to relieve property which becomes exempt in mid-stream from the taxes for the balance of the year, at least where the acquisition is by an entity other than the municipality itself or a coterminous taxing district, would put the burden represented by those taxes solely on those who own property in the municipality rather than on all those in the larger area sharing in the public benefit  here highways open to the use of the people of the whole State , as would be the case if the acquiring public entity were held responsible for the remaining taxes as part of the cost of acquisition. * * *" (at 47 N.J., at pp. 318-319)
That rationale is equally applicable to the particular situation here presented.
The consequences to the State of a ruling of retrospectivity must likewise be considered. Perhaps to permit limitless retrospectivity would invite an oppressive multitude of municipal claims against the State, causing grave administrative difficulties to the Department and serious impact upon the State's financial structure. That issue is not before the court. We are here concerned only with municipal claims arising earlier in the same tax year but prior to June 9, 1966. There *111 is no proof that such claims will cause insurmountable difficulties to the State.
All municipal financing  assessment of ratables, calculation of anticipated revenues and budgeting of expenditures  is geared to meet the governmental needs for a tax year. The tax year is the calendar year and all events in the levy and payment process take place within that year except the assessment date which is October 1 of the preceding year. City of East Orange v. Palmer, 47 N.J., at p. 317.
It seems unfair to conclude that taxpayers in municipalities where the State or Department acquired properties before June 9, 1966 should remain unrelieved from the dislocations and unfair burdens in that tax year caused by such takings, but that such inequities will not be visited upon taxpayers in municipalities where the takings occurred after June 9, 1966. On the contrary, the calendar year should be a determinant in applying a new rule relating to tax liability. Though some unevenness is an inevitable consequence of any change in doctrine, reference to the calendar year may help mitigate it.
Reliance, when validly raised, can be a bar to retroactivity. Dalton v. St. Luke's Catholic Church, 27 N.J. 22 (1958). However, the facts in the instant cases do not warrant such a finding. As observed by the Supreme Court in City of East Orange v. Palmer, at p. 326, strictly speaking, there was nothing by way of legislation or case law interpreting it in 1966 which indicated that the State's administratively practiced tax exemption should take effect at the moment of acquisition. Further, the trial court opinion in that case in 1964, while not controlling precedent, did serve notice of the State's exposure to such liability, certainly as to acquisitions by conveyance. In any event, the public interest in affording relief to municipalities and their 1966 taxpayers overshadows the State's reliance, questionable at best. Note, 60 Harv. L. Rev. 437, 441 (1947).
Accordingly, the State and Department should remain liable from the date title passed for the balance of the year *112 1966 taxes regardless of whether the properties were acquired prior to or subsequent to June 9, 1966. Justice, the equities and the political and economic realities favor the instant claims of the municipalities and their taxpayers. It is frankly recognized that the holding in these particular cases stands not on a determination of blanket retroactivity, nor does it conform to the pattern of a prospective overruling, nor even to the Molitor variant, but this court believes it consistent with the policies underlying City of East Orange v. Palmer and the guidelines of State v. Johnson, supra.
Although liability remains upon the plaintiffs for the payment of taxes for the balance of the tax year 1966, defendants in each case should be enjoined from proceeding with a tax sale.
The townships contend that by virtue of N.J.S.A. 54:5-19 the tax collector of the municipality is charged with a peremptory duty to hold a tax sale for tax arrears, Finnegan v. Miller, 132 N.J.L. 192 (Sup. Ct. 1944), and that this language makes no exception in favor of the State. However, in Transcontinental Gas Pipe Line Corp. v. Department of Conservation and Economic Development, 43 N.J. 135 (1964), the court held:
"* * * where the State is not expressly or by necessary implication, included within the terms of the statute, it should be clear from the nature of the mischief to be reached, or the language used, that the government itself was in the contemplation of the Legislature, before a court would be authorized to put a construction on a statute which would affect its rights. * * *" (at p. 143)
The court also stated:
"It is to be noted that the statute does not read `all persons including the State of New Jersey' * * *. Had it been intended to extend the waiver of State immunity to suits where the State has title to the subject property it would have been a simple matter to have aptly expressed that purpose by directly appending the including phrase directly to `persons' as above noted. * * *" at p. 146; (emphasis supplied)
*113 It may be argued that the State was not in the contemplation of the Legislature when N.J.S.A. 54:5-19 was enacted. As already observed, for many years prior to the decision in City of East Orange v. Palmer the State and its municipalities acted under the belief that lands acquired by the State for highway purposes became exempt from taxation at the moment of acquisition. Thus, the Tax Sale Law seemed wholly unrelated to the State.
The municipalities contend that a tax sale to enforce a lien which remains on state-acquired lands until payment (N.J.S.A. 54:5-6, City of East Orange v. Palmer, 47 N.J., at p. 330) is not a suit, so the doctrine of sovereign immunity expressed in Transcontinental Gas Pipe Line Corp. v. Department of Conservation, supra, is irrelevant. While a tax sale may not be a law suit, it is a prelude to a foreclosure proceeding. Where the State holds the title to property, it is immune from any suit in foreclosure on a tax sale certificate under N.J.S.A. 54:5-104.29 and N.J.S.A. 54:5-86. Transcontinental Gas Pipe Line Corp. v. Department of Conservation, supra. Proceedings to foreclose redemption by notice pursuant to N.J.S.A. 54:5-77 are sparingly, if ever, used because of the difficulties involved in obtaining marketable title. Ibid., at p. 140.
Therefore, as a practical matter, being unable to foreclose, the purchaser of a tax sale certificate, whether a private party or the municipality, would be required to either await voluntary redemption by the Department or bring an action for a court order directing redemption through the distribution of State moneys. Further, the success of this action to compel redemption depends on whether adequate funds through the annual blanket legislative appropriations for highway construction (necessarily including all costs of land acquisition) are available to the Department. This uncertainty exists because a court may order a distribution of state moneys only where a legislative appropriation exists authorizing it, City of East Orange v. Palmer, 47 N.J., at p. 330, but not where such appropriated funds are exhausted. *114 The judiciary cannot order the Legislature to appropriate money, or the Governor to approve an appropriation if one were made. Gallena v. Scott, 11 N.J. 231, 238, 239 (1953); Amantia v. Cantwell, 89 N.J. Super. 7 (App. Div. 1965); Fitzgerald v. Palmer, 47 N.J. 106 (1966); O'Neill v. State Highway Authority, 50 N.J. 307 (1967).
Moreover, the holding of a tax sale might arouse intra-governmental discord. It would not promote the Supreme Court's expectation in City of East Orange v. Palmer that "both entities will conform to the declaration of obligation and make payment." (at p. 330). The court there alluded approvingly to the streamlined procedure for payment by the State of municipal taxes on certain nonexempt lands owned by it. N.J.S.A. 54:4-2.1 This section provides for the direct rendering of bills by the municipality to the State.
In light of all these observations, it appears that N.J.S.A. 54:5-19 is inapplicable to properties owned by the State or Department. Accordingly, the tax collectors for the respective municipalities will be enjoined from proceeding with the sale of such properties for unpaid taxes.