775 A.2d 795 (2001)
342 N.J. Super. 196
Matthew W. PENSABENE and Kristine Pensabene, His Wife, Plaintiffs,
v.
Robert STRAUS, III and/or John Doe # 1-5 (fictitious name), PNC Leasing LLP and/or John Doe Company # 1-5 (fictitious name), Richard Roe Company # 1-5 (fictitious name) and/or Richard Roe, Inc., # 1-5 (fictitious name), Defendants.
Superior Court of New Jersey, Law Division, Burlington County.
Decided March 2, 2001.
*796 Jeffrey Klinger, Esquire, argued the cause for the Plaintiff (Flynn & Austin).
Timothy M. Rolland, Esquire, Haddonfield, argued the cause for the Defendants (Lally, Holtzman, Gilligan and Quasti, Esqs.)
SWEENEY, J.S.C.
At issue in this case is whether a chiropractor is a "physician" qualified to issue a certification sufficient to satisfy the requirements of N.J.S.A. 39:6A-8, the "New" Verbal Threshold Law. The underlying facts are not in dispute. Plaintiff was injured in an automobile accident on May 11, 1999. He filed his Complaint in the Law Division on June 26, 2000 in which he alleged that defendant, Straus, negligently operated a leased vehicle owned by defendant, PNC Leasing, LLP, causing the accident in question. Plaintiff is subject to the verbal threshold. Defendants move for summary judgment. They assert that the Certification of Permanency filed by Plaintiff pursuant to N.J.S.A. 39:6A-8 is legally defective for two (2) reasons. First, Defendants claim that Larry Sabel, D.C., a chiropractor, is not a "physician" within the meaning of the Statute. Finally, if Dr. Sabel meets the definition of "physician," his Certification fails because it is a net opinion.
In his Certification, Dr. Sabel states:
"1. I am a licensed physician of the State of New Jersey and was a treating physician for automobile related injuries incurred by the plaintiff, Matthew W. Pensabene, resulting from an accident on May 1[sic], 1999.
"2. Based upon my professional expertise in the findings and the attached reports, including reference to clinical, objective findings and/or objective medical tests, it is my opinion that within a reasonable degree of medical probability my patient has sustained permanent injuries that will have permanent residual sequelae. It is my further understanding that within a reasonable degree of medical/chiropractic probability, that although further treatment in the future may alleviate some symptomatology, the *797 permanent residuals of the injuries cannot be completely resolved by way of further medical treatment intervention, and there will always be some aspect of residual permanent injuries experienced for the balance of my patient's lifetime.
"3. I affirm that the above conclusions are true to the best of my knowledge and belief, and I am aware that I am subject to punishment as outlined in the Automobile Cost Reduction Act, if any statements are made with fraudulent intent to misrepresent the residual aspects of my patient's injury."
While discovery is ongoing, it is apparent from the record before the Court that Dr. Sabel had referred Plaintiff to Marc L. Kahn, M.D., an orthopedic surgeon on May 27, 1999. After reviewing X-rays and an MRI, Dr. Kahn diagnosed Plaintiff with acute, traumatic cervical sprain and strain; acute traumatic lumbro sacral sprain and strain; herniated/bulging disk, cervical spine; and internal derangement, right knee. He concluded that "this is no doubt a direct result of the above-mentioned accident."
N.J.S.A. 39:6A-8 provides in pertinent part:
"In order to satisfy the tort option provisions of this section, the plaintiff shall, within 60 days following the date of the answer to the complaint by the defendant, provide the defendant with a certification from the licensed, treating physician or a board certified licensed physician to whom the plaintiff was referred by the treating physician. The certification shall state, under penalty of perjury, that the plaintiff has sustained an injury described above. The certification shall be based on and refer to objective clinical evidence, which may include medical testing, except that any such test shall be performed in accordance with medical protocols ..."
The Verbal Threshold Statute implicates for definitional purposes N.J.S.A. 45:9-5.1:
"... the term `physician and surgeon' or `physician or surgeon' shall be deemed to include practitioners in any branch of medicine and/or surgery or method of treatment or human ailment, disease, pain, injury, deformity, mental or physical condition ...., the practice of medicine and/or surgery shall be deemed to include, inter alia, the practice of osteopathy ..." (emphasis added)
The language of the foregoing statute is, at best, confusing and ambiguous in at least two areas. Following "practitioners in any branch of medicine and/or surgery" is the disjunctive phrase "or method of treatment of human ailment, ..." That latter phrase can easily be read to include a chiropractor since it is commonly recognized that chiropractic involves the treatment of a human ailment, pain and injury. Add to that ambiguity the confusion caused by the phrase "inter alia" before the phrase "the practice of osteopathy." "Inter alia" means "among other things." Black's Law Dictionary, Revised 4th Ed. 1968. Read in context, the term "inter alia," words of inclusion, could be understood to encompass chiropractors as well.
In Thomas v. Carlton Hosiery Mills, 14 N.J.Super. 44, 81 A.2d 365 (App.Div., 1951), defendant appealed from a decision of the Disability Insurance Service, Division of Employment Security in the Department of Labor and Industry, allowing temporary disability benefits. The sole issue was whether plaintiff was entitled to such benefits while she was under the care of a chiropractor. The Temporary Disability Benefits Law (P.L.1948c 110p 586 (R.S. 43:21-25, et seq., N.J.S.A.)) provided that no benefits were payable "for any period during which a claimant is not under the care of a legally licensed physician." The hearing officer determined *798 that the chiropractor treated plaintiff within the scope of his license and that he was a legally licensed physician within the meaning of the Statute.
The Court held that the act regulating the practice of medicine and surgery also regulates the practice of chiropractic and that a license to practice chiropractic is a license to practice medicine limited to detecting and adjusting, by hand only, vertebral subluxations. The Court stated that, "technically, no one under the Act is licensed to practice as a `physician'." Finally, the Court said:
"There is nothing in the Temporary Disability Benefits Law to put an employee on notice to seek treatment only by a physician licensed to practice medicine and surgery in all its branches. The purpose of the provision in the law... is obviously intended to guard against fraudulent claims and should be construed from that point of view. At most, there is an ambiguity arising out of the use of the term `legally licensed physician.' Many persons for whose benefit this Law was enacted consult chiropractors in the belief that they are dealing with legally licensed physicians. The licensing of chiropractors under the Medicine and Surgery Act encourages them in this belief. It would be unjust to construe the ... Law so narrowly as to deprive worthy claimants of the benefits thereunder." (emphasis added)
Here, the definition of "physician" found in N.J.S.A. 45:9-5.1 is more ambiguous and confusing than the definition in Thomas, supra. When dealing with questions of statutory construction, the court first considers the plain meaning of the provision at issue. State v. Hoffman, 149 N.J. 564, 578 695 A.2d 236 (1997). Such language should be given its ordinary meaning, absent a legislative intent to the contrary. Merin v. Maglaki, 126 N.J. 430, 434, 599 A.2d 1256 (1992). When a statute is "silent or ambiguous," however, the court must interpret the statute in light of the Legislature's intent. Accountemps v. Birch Tree Group, 115 N.J. 614, 622, 560 A.2d 663 (1989). "The primary task for the court is to `effectuate the Legislative intent in light of the language used and the objects sought to be achieved.'" Hoffman, supra, 149 N.J. at 578, 695 A.2d 236. Here, it is apparent from a reading of the statute that its purpose is to eliminate fraudulent claims and to allow meritorious claims to proceed.
A perfectly reasonable reading of the Statute, here, would lead the reader to conclude that a chiropractor, not specifically excluded, is included in the definition of "physician and surgeon." To deny what appears to be a meritorious claim for non-economic damages because the Certification was signed by a chiropractor would constitute a manifest injustice. I determine that a chiropractor, acting within the scope of his license, may certify that a plaintiff's injuries fall within the purview of the Act.
Defendants also attack the Certification as constituting a net opinion. Jimenez v. GNOC Corp., 286 N.J.Super. 533, 670 A.2d 24 (App.Div.1996). The Statute provides that "the certification shall state..., that the plaintiff has sustained an injury described above. The certification shall be based on and refer to objective clinical evidence, which may include medical testing ..." Here, the Certification signed by Dr. Sabel does not fall short of the mark. In it he states that it is based on and he refers to objective clinical evidence found in the reports attached. However, among the reports attached are those of Mark L. Kahn, an orthopedic surgeon, Robert J. Wallner, D.O., a radiologist, Dilip Kapadia, M.D., a radiologist, and Hillard C. Sharpf, M.D., a neurologist. *799 Those reports contain references to X-rays and MRI's and are clearly and unmistakably incorporated by reference into the Certification. However, to the extent that those reports relate to areas outside scope of Dr. Sabel's license, this Court determines that Dr. Sabel impermissibly incorporated them by reference. To the extent that the reports deal with areas within the expertise of Dr. Sabel, that is injuries to the spine and its components, they are justifiably incorporated by reference. I am satisfied that the Certification is not a net opinion and serves the statutory purpose.
The Motions for Summary Judgment are denied.