881 A.2d 776 (2002)
380 N.J. Super. 203
Jose A. OLARTE and Mary Olarte, Plaintiffs,
v.
Fred CROCKER, Defendant.
Superior Court of New Jersey, Law Division.
Decided September 25, 2002.
*777 Jacqueline Rodriguez for plaintiff (Chet Preston, attorney).
Karen E. Heller, Springfield, for defendant (Mortenson and Pomeroy, Attorneys).
DE LUCCIA, J.S.C.
In this case, the court is required to determine whether a certification authored by a chiropractor is compliant with the requirements of the Automobile and Insurance Cost Reduction Act of 1998, L. 1998, c. 21 (AICRA). This court is persuaded that a chiropractor qualifies as a "physician" within the purview of N.J.S.A. 39:6A-8.
The matter is before the court by way of defendant's motion for summary judgment. Plaintiff was injured in an automobile accident involving a vehicle owned and operated by defendant which occurred on June 30, 1999. It is stipulated that plaintiff's vehicle was insured by an automobile liability policy in which the verbal threshold requirements of AICRA applied.
The proofs before the court established that Samuel Evenstein, D.C. was the sole health care provider for plaintiff as a result of the injuries sustained as a consequence of the June 30, 1999 accident. Dr. Evenstein, as a licensed chiropractor, specifically qualifies as a "health care provider" under AICRA. N.J.S.A. 39:6A-2(1). Bills issued by Dr. Evenstein for treatment provided to plaintiff qualify as eligible "medical expenses" under AICRA. N.J.S.A. 39:6A-2(e).
Defendant's motion advances two alternative theories in respect of plaintiff's non-compliance with the requirements of AICRA. Defendant first argues that as a chiropractor, Dr. Evenstein fails to qualify as a "physician" within the contemplation of N.J.S.A. 39:6A-8. Alternatively, defendant argues that even if Dr. Evenstein does qualify, his certification is untimely.
Plaintiff responds by citing the Law Division opinion in Pensabene v. Straus, 342 N.J.Super. 196, 775 A.2d 795 (Law Div.2001). In Pensabene, the court found the definition of "physician" as contained in N.J.S.A. 45:9-5.1 to be "confusing and ambiguous." Id. at 199, 775 A.2d 795. The court concluded that it was reasonable to construe the statute to include chiropractors within the contemplation of the terms "physician and surgeon" or "physician or surgeon", ". . . since it is commonly recognized that chiropractic involves the treatment of human ailments, pain and injury." Ibid.
In reaching its decision, the court relied upon Thomas v. Carlton Hosiery Mills, 14 N.J.Super. 44, 81 A.2d 365 (App.Div.1951). In Thomas, the court was required to determine whether a chiropractor was within the contemplation of the term "legally licensed physician" as then found in the Temporary Disability Benefits Law, N.J.S.A. 43:21-26, et seq. Id. at 48, 81 A.2d 365. The Appellate Division found *778 the term "legally licensed physician" as then contained in R.S. 43:21-39(b) N.J.S.A., to be ambiguous. Id. at 49, 81 A.2d 365. The court observed that the practice of chiropractic was regulated by the same statutes that regulated the practice of medicine and surgery, i.e., N.J.S.A. 45:9-1 and N.J.S.A. 45:9-5.1. Id. at 48, 81 A.2d 365. The court also noted that, at that time, a chiropractor was a full member of the Board of Medical Examiners and licenses issued by that Board pursuant to N.J.S.A. 45:9-1 were issued to qualified persons to practice medicine and surgery, osteopathy or chiropractic. Ibid.
Since the Temporary Disability Benefits Law neither defined the term "legally licensed physician," nor restricted its application to practitioners of any particular branch of the practice of medicine and surgery, the Appellate Division concluded that applicants for temporary disability benefits were not required to seek treatment exclusively from physicians practicing medicine and surgery in all of its branches. Ibid. The court found that the term "physician", ". . . also connotes legally licensed practitioners of other more limited schools," including chiropractors. Id. at 48-49, 81 A.2d 365.
Defendant dismisses plaintiff's arguments as being unpersuasive and unsound. Defendant notes that this court is not bound by the ruling in Pensabene, supra, since it was issued by a court of equal jurisdiction. See Goldberg v. Traver, 99 N.J.Super. 103, 107-108, 238 A.2d 695 (Ch.Div.1968). Defendant also maintains that Pensabene was "erroneously decided and should not be followed." Defendant reasons that the Pensabene court's reliance upon the ruling in Thomas v. Carlton Hosiery Mills, supra, was misplaced since the underlying predicate for the Appellate Division's holding is no longer valid. Defendant argues that based upon the legislative history of N.J.S.A. 45:9-5.1 and N.J.S.A. 45:9-41.17, et seq., the Legislature has evidenced an intent to remove chiropractors from the ambit of the term "licensed physician."
Defendant maintains that chiropractors, as a consequence of their training and experience, which specifically excludes surgery and the use of prescription medications, "simply cannot accurately assess whether further medical treatment could yield further healing" as required by N.J.S.A. 39:6A-8(a). He argues that this distinction is particularly crucial in cases involving neck and back injuries where medical treatment, such as surgery and the introduction of prescription medications, can often yield a return to function in instances where chiropractic treatment has been unsuccessful. Therefore, according to defendant, since chiropractors are precluded from applying either modality during treatments, a certification by a chiropractor as to permanency would only be limited to the chiropractor's assessment of the efficacy of further chiropractic treatment and not further medical treatment. The arguments raised by defendant were not addressed in Pensabene.
In a clear departure from the practice under the former verbal threshold statute, AICRA now requires plaintiff to serve a physician's certification upon defendant within sixty days following the date of defendant's answer to plaintiff's complaint. Specifically, the statute requires that:
the plaintiff shall, within sixty days following the date of the answer to the complaint by the defendant, provide the defendant with a certification from the licensed, treating physician or a board certified licensed physician to whom the plaintiff was referred by the treating physician. The certification shall state, under penalty of perjury, that the plaintiff has sustained an injury described *779 above. The certification shall be based on and refer to objective clinical evidence, which may include medical testimony, except that such tests shall be performed in accordance with medical protocols pursuant to N.J.S.A. 39:6A-4(a) and the issue of valid diagnostic tests in accordance with N.J.S.A. 39:6A-4.7. [N.J.S A. 39:6A-8(a).]
The definition of the terms "licensed treating physician" and "board certified licensed physician" are found in N.J.S.A. 39:6A-8(a) and not N.J.S.A. 39:6A-2, the definitional section of AICRA. Under AICRA, for the purposes of compliance with the physician's certification requirements, ". . . `physician' means a physician as defined in section 5 of L. 1939, c. 115 (C. 45:9-5.1)." Ibid.
L. 1939, c. 115 was a legislative enactment "concerning the regulation of the practice of medicine and surgery, licensing of physicians and surgeons and making uniform requirements for the license of persons who practice any branch of medicine or surgery or use any method of treatment of human ailment, disease, pain, injury, deformity, mental or physical condition."
Section 5 of L. 1939, c. 115 defined the terms "physician and surgeon" or "physician or surgeon" to:
. . . be deemed to include practitioners in any branch of medicine and/or surgery or method of treatment of human ailment, disease, pain, injury, deformity, mental or physical condition. Within the meaning of this act, except as herein otherwise specifically provided,. . . the practice of medicine and/or surgery shall be deemed to include, inter alia, the practice of osteopathy and chiropractic. . .(emphasis added)
It is clear that as enacted, the Legislature intended that both osteopaths and chiropractors be included within the contemplation of the phrase "the practice of medicine and/or surgery." In 1939, however, both osteopaths and chiropractors were licensed by the State Board of Medical Examiners. In fact, the statute provided that of the eleven members of the Board of Medical Examiners, one was required to be an osteopath and one a chiropractor. L. 1939, c. 115 § 1.
In 1953, the Legislature enacted L. 1953, c. 233, to provide for special regulation of the practice of chiropractic. While chiropractic was removed from the definition of "the practice of medicine and/or surgery," a chiropractor continued to be a member of the Board of Medical Examiners, and chiropractors continued to be licensed by that Board. L. 1953, c. 233, §§ 1, 2.
This legislation also amended N.J.S.A. 45:9-14.5 to revise the definition of the practice of chiropractic. The amendment prohibited licensed chiropractors from using endoscopic or cutting instruments, prescribing, administering or dispensing drugs or medicines for any purpose whatsoever or performing surgical operations with the exception of adjustments of the articulations of the spinal column. The amendment also prohibited licensed chiropractors from signing any "certificate required by law or the State Sanitary Code concerning reportable diseases, birth, or marriage or death certificates." Additionally, the amendment barred licensed chiropractors from using "the title doctor or its abbreviation" in the practice of chiropractic unless it is qualified by the word "chiropractor." L. 1953, c. 233, § 3.
In 1989, the Legislature enacted comprehensive revisions in respect of health care professionals, with the adoption of the Professional Medical Conduct Reform Act of 1989, L. 1989, c. 300 and the Chiropractic Board Act, L. 1989, c. 153. This legislation amended N.J.S.A. 45:9-1, removing *780 chiropractors as a member of the State Board of Medical Examiners, and transferring the licensing responsibilities of chiropractors to the newly created State Board of Chiropractic Examiners. See N.J.S.A. 45:9-16.
The Board of Medical Examiners continued to maintain jurisdiction over physicians or surgeons, including osteopaths and podiatrists. All powers previously vested in the State Board of Medical Examiners relating to the practice of chiropractic were transferred to the State Board of Chiropractic Examiners and that Board was empowered to take over and complete all unfinished undertakings of the State Board of Medical Examiners concerning the practice of chiropractic. L. 1989, c. 153, § 9. (N.J.S.A. 45:9-41.5). Section 3 of L. 1989, c. 153, defined the term "chiropractor" as a "person trained and qualified in the discipline of chiropractic, whose license is in force and not suspended or revoked at the time in question." N.J.S.A. 45:9-41.19(b).
However, the delineation of the practice of chiropractic remained unchanged. N.J.S.A. 45:9-14.5 presently defines the practice of chiropractic as "[a] system of adjusting the articulations of the spinal column by manipulation therapy." Regulations adopted by the Board of Chiropractic Examiners define the practice of chiropractic as "that patient health care discipline whose methodology is the adjustment and/or manipulation of the articulations of the spine and related structures." N.J.A.C. 13:44E-1.1 and see Prudential Prop. & Cas. v. Nardon e, 332 N.J.Super. 126, 133, 752 A.2d 859 (Law 2000).
The issue of whether chiropractors are to be considered physicians practicing within a branch of medicine and surgery has been the subject of judicial analysis for over eighty years. In State Board of Medical Examiners, etc. v. Giedroyc, 91 N.J.L. 61, 102 A. 906 (Sup.Ct.1918), our former Supreme Court concluded that the defendant, an unlicensed chiropractor, was guilty of practicing medicine and surgery without a license by virtue of the fact that he practiced hydropathy and naturopathy; treated patients by methods known as chiropractic, hydropathy and naturopathy; diagnosed a disease or illness and then administered treatments consisting of manipulations, electric or vapor baths. Id. at 64, 102 A. 906. The court concluded that such conduct was within the scope of L. 1915, p. 482, § 5, now N.J.S.A. 45:9-18. Id. at 63, 102 A. 906; See also State Board of Medical Examiners v. Maza, 9 N.J. Misc. 171, 172, 153 A. 259 (Sup.Ct.1918), (holding that, by enacting L. 1921, c. 136, the Legislature intended "to label chiropractic as a branch of medicine or surgery.")
N.J.S.A. 45:9-18 has remained unchanged since 1915. The legislative enactments of 1989 (L. 1989, c. 300 and L. 1989, c. 153) did not amend, modify or abrogate N.J.S.A. 45:9-18. The statute provides as follows:
Any person shall be regarded as practicing medicine and surgery, within the meaning of this chapter, who shall use the words or letters "Dr.", "Doctor", "Professor", "M.D.", or "M.B." in connection with his name or any other title intending to imply or designate him as a practitioner of medicine or surgery in any of its branches, and who, in connection with such title or titles, or without the use of such titles, or any of them, holds himself out as being able to diagnose, treat, operate or prescribe for any human disease, pain, injury, deformity or physical condition, or who shall either offer or undertake by any means or methods to diagnose, treat, operate or prescribe for any human disease, pain, *781 injury, deformity or physical condition. The provisions of this chapter shall apply to all persons professing and attempting to cure disease by means of the so-called system of "faith curism", "mind dealing", "laying-on-of-hands", and other similar systems.
Since concededly the definition of "physician" as found in N.J.S.A. 45:9-5.1, is confusing, it is submitted that the statute must be read in para materia with N.J.S.A. 45:9-18, in order to glean the Legislature's intention from the whole of the enactments. See Azar v. Jabra, et al., 167 N.J.Super. 543, 552, 401 A.2d 293 (Dist.Ct.1979). When so read, it becomes clear that, notwithstanding the deletion of chiropractors from the definition of "physician" in N.J.S.A. 45:9-5.1, the discipline of chiropractic continues to be treated in this state as a branch of the practice of medicine and surgery.
Additional support for this conclusion is revealed upon an examination of the parallelism between the criteria for admission to the practice of chiropractic and the practice of medicine. In Rosenberg by Rosenberg v. Cahill, 99 N.J. 318, 492 A.2d 371 (1985), our Supreme Court considered whether a medical doctor was qualified to testify as an expert in a professional malpractice case against a chiropractor. The Supreme Court concluded that a medical doctor may be competent to testify as an expert concerning the standard of care applicable to chiropractors as to matters that each of the licensed disciplines of medicine and chiropractic share in common in terms of education, training and licensing. Id. at 334, 492 A.2d 371.
In reaching its decision, the Supreme Court engaged in extensive analysis of "[t]he interrelationship between (chiropractors and medical doctors as). . . illustrated by the history of the chiropractic profession's struggle to gain acceptability and official recognition." Id. at 329, 492 A.2d 371. The court noted that "[f]or many years, no chiropractor's school had been approved by the Board of Medical Examiners and very few chiropractors had been licensed under the existing system." Ibid. In 1944, the Legislature conducted committee hearings to consider whether a separate chiropractic board should be established. Ibid. The Legislature elected not to adopt such legislation and continued to include chiropractic in the general scheme of the regulation of medicine and surgery. Ibid. In 1949, a committee appointed by the Governor to study the practice of chiropractic in the state issued a report. Ibid. In its report, the committee "emphasized the common responsibilities of the medical and chiropractic professions and concluded that chiropractors must have the same fundamental education as other medical practitioners." Ibid. The committee recommended against separate licensing of chiropractors to ensure that the education and training of persons treating the sick should be of the same standard. Id. at 329-330, 492 A.2d 371.
The Court noted that with the enactment of L. 1953, c. 233, the Legislature provided for the "distinctive regulation of chiropractic." Id. at 330, 492 A.2d 371. By this legislation, the Legislature reaffirmed common standards and elements of the chiropractic and the medical professions, and incorporated into Title 45 provisions detailing licensing requirements for chiropractors and chiropractic schools. See L. 1953, c. 233, §§ 3-14, and see N.J.S.A. 45:9-14.5; N.J.S.A. 45:9-41.1; N.J.S.A. 45:9-41.11. Ibid. The Court observed that the state administered examination which chiropractors must pass "includes basic subjects such as anatomy, including neurologic and histologic anatomy, physiology, pathology, bacteriology, non-surgical diagnosis, *782 chemistry, hygiene and the therapeutics of chiropractic. N.J.S.A. 45:9-41.5" Ibid. "Many of these subjects are similar to those covered in the examination for the license to practice medicine, although the latter anticipates greater depth of knowledge. N.J.S.A. 45:9-15" Ibid.
The Court also noted the parallelism between the educational requirements for the medical and chiropractic professions. State approved chiropractic schools must include in their curriculum classes in anatomy, embryology, histology, physiology, pathology, bacteriology, chemistry, neurology, gynecology, obstetrics, dermatology and pediatrics. Id. at 330, 492 A.2d 371; and fn. 2, 330-331. The curriculum requirements noted by the Supreme Court in Rosenberg, supra, were at that time promulgated by the State Board of Medical Examiners through administrative regulations, formerly N.J.A.C. 13:35-10.0. Upon the creation of the State Board of Chiropractic Examiners pursuant to L. 1989, c. 153, all of the regulatory requirements formally established by the Board of Medical Examiners were codified. N.J.S.A. 45:9-41.6(j).
The Supreme Court in Rosenberg, supra, also focused on the fact that "chiropractors, like medical doctors, are permitted to use x-rays for the purpose of diagnosis." Id. at 331, 492 A.2d 371; and see N.J.A.C. 13:44E-1.1(c)1. The Court also recognized that chiropractors were required to receive considerable education and demonstrate knowledge with respect to the general field of diagnosis, not only respecting conditions that fell within the field of chiropractic but also those more properly attributed to other licensed healing disciplines. Ibid.; and see N.J.S.A. 45:9-41.6(j).
The question to be answered is whether the Legislature, by establishing a separate board to regulate the practice of chiropractic and removing responsibility for the regulation and licensing of chiropractors from the State Board of Medical Examiners, has evidenced an intent to remove licensed chiropractors from the contemplation of the term "physician" practicing medicine and surgery in one of its limited schools.
In analyzing this issue, it is recognized that one of the cardinal principles of statutory construction is ". . . that the Legislature is thoroughly conversant with its own legislation and the judicial construction of its statutes." (citations omitted). Brewer v. Porch, 53 N.J. 167, 174, 249 A.2d 388 (1969). This court is satisfied that the Legislature has not evidenced an intent to reshape over eighty years of legislative and jurisprudential history to declassify chiropractors as physicians. The stated legislative purpose with respect to the adoption of the Chiropractic Board Act (L. 1989 c. 153) is ". . . to properly protect the citizenry (of this state) who receive the services of a chiropractor by maintaining and ensuring standards of competency and integrity of the profession and preventing unsafe, fraudulent or deceptive practices. . . ." N.J.S.A. 45:9-41.18. The curriculum requirements for students of chiropractic at chiropractic schools have not been diminished in any respect since their codification in N.J.S.A. 45:9-41.6. It was the identical curriculum that our Supreme Court in Rosenberg, supra, relied upon in its analysis of the interrelationship between chiropractic and medicine. There is no evidence that the creation of a separate board of chiropractic examiners has either expressly or impliedly altered the ". . . interrelationship in areas of overlap between chiropractic and medicine which have been evident throughout the evolution of the statutory and regulatory structure governing the practice of chiropractic." Rosenberg by Rosenberg v. Cahill, supra, 99 N.J. at 333, 492 A.2d 371.
*783 Accordingly, this court concludes that chiropractors are to be considered physicians qualified to author certifications of permanency as required by N.J.S.A. 39:6A-8a.
The second prong of defendant's argument is that the untimely filing of the physician's certification requires the dismissal of the complaint. The circumstances surrounding the late filing developed as follows: plaintiff's complaint was filed January 24, 2001 and defendant filed an answer on June 13, 2001. An associate in plaintiff's attorney's office forwarded a physician's certification to Dr. Evenstein on or about May 29, 2001. The associate subsequently left the office around June 1, 2001. It has been represented that he left under circumstances which provided plaintiff's attorney with a paucity of information regarding the status of his files, including this matter. Plaintiff's attorney advises that it was not until November, 2001 that two new associates were hired to assume the management of the former associate's files. Apparently in the process of transition, the absence of the physician's certification was overlooked. It was not until May 22, 2002, when defendant moved for summary judgment, that plaintiff's counsel became aware of the absence of the certification. Thereafter, plaintiff provided the physician's certification from Dr. Evenstein.
N.J.S.A. 39:6A-8(a) requires the physician's certification to be served on the defendant within sixty days from the date of the answer. The statute allows the court to grant an additional sixty days to file a certification upon the finding of good cause. The intent and purpose of this section of AICRA was analyzed by the Appellate Division in Watts v. Camaligan, 344 N.J.Super. 453, 782 A.2d 479 (App.Div.2001). In Watts, the Appellate Division concluded that ". . . the primary and overriding purpose for requiring a physician's certification is to weed out fraud occasioned by those in both medical and legal professions who knowingly make, or cause to be made, false and misleading statements concerning the nature and extent of a claimant's injuries." Id. at 466, 782 A.2d 479.
The court contrasted the provisions in AICRA requiring a physician's certification with the Affidavit of Merit Statute for malpractice actions. Ibid. The Appellate Division observed that there are no corresponding provisions in the Affidavit of Merit Statute "delineating criminal conduct for one who purposely or knowingly makes or causes a fictitious, fraudulent or misleading certification to be filed." (citations omitted) Ibid. The Appellate Division concluded that "[t]he requirement (of a physician's certification) is procedural in nature related to the sufficiency of the pleadings, i.e., the statement of a claim. Id. at 467, 782 A.2d 479. The required production is not intended to go to the establishment of a cause of action." Ibid. The Appellate Division, therefore concluded that ". . . the impediment to future causes of action created by the Legislature was the revised verbal threshold, not the failure to file the physician's certification." Id. at 466, 782 A.2d 479.
In Watts, it was concluded that plaintiff's failure to submit a physician's certification pursuant to AICRA warranted a dismissal. Id. at 461, 782 A.2d 479. The court however, determined that the dismissal should not be with prejudice since the failure to comply with the physician's certification does not go to the heart of the cause of action. Id. at 463, 782 A.2d 479. The Appellate Division analogized the failure to provide a timely physician's certification with the failure to state a claim pursuant to R. 4:6-2(e), and determined that "barring any other impediments such as statute of limitations, a dismissal without *784 prejudice should ordinarily be granted." Id. at 467, 782 A.2d 479.
In this case, however, the impediment of the statute of limitations is present, and dismissal without prejudice would have the effect of barring a refiling of the complaint. Accordingly, while the reasons offered by plaintiff's attorney for failure to comply with the physician's certification do not constitute "good cause", a dismissal that would result in a permanent bar to plaintiff's complaint would be a harsh and unjust result visited upon an innocent litigant. Although the physician's certification is clearly untimely, it does comply with the requirements of N.J.S.A. 39:6A-8(a). An otherwise viable claim should not be barred on a purely procedural basis. See Printing Mart-Morristown v. Sharp Electronics, 116 N.J. 739, 772, 563 A.2d 31 (1989).
However, plaintiff's attorney's unjustifiable non-compliance should not be disregarded. Defendant may file a motion pursuant to R. 1:4-8, Frivolous Litigation, seeking the imposition of sanctions. See Watts v. Camaligan, supra, 344 N.J.Super. at 468, 782 A.2d 479. Accordingly, defendant's motion for summary judgment is denied.