883 A.2d 407

MARIO H. AFRAM, PLAINTIFF–APPELLANT, v. JACK
S. HELLER, DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued September 13, 2005—Decided October 4, 2005.

Before Judges KESTIN, R.B. COLEMAN and SELTZER.

*Aleksey Lyubarsky* argued the cause for appellant (*Wilentz, Goldman & Spitzer,* attorneys; *Barry A. Cooke,* of counsel; *Mr. Lyubarsky,* on the brief).

*Marie Seitz* argued the cause for respondent (*Heim & McEnroe,* attorneys; *Ms. Seitz,* on the brief).

The opinion of the court was delivered by

KESTIN, P.J.A.D.

Plaintiff appeals from an order granting defendant's motion for summary judgment and dismissing the complaint. We reverse and remand.

Plaintiff was injured in a motor vehicle accident on November 22, 2000. The complaint in this matter was filed on August 8, 2002. Following discovery, defendant filed a motion for summary judgment seeking dismissal of the complaint pursuant to the applicable verbal threshold in *N.J.S.A.* 39:6A–8a, a provision of the Automobile Insurance Cost Reduction Act of 1998 (AICRA). Defendant contended, inter alia, that plaintiff had not made an adequate showing that he had sustained a serious injury of a permanent nature in the accident; that plaintiff had proffered no evidence that his alleged injuries had inflicted a significant impact on his life; and that plaintiff had failed to provide the comparative analysis, required by *Polk v. Daconceicao*, 268 *N.J.Super.* 568, 634 *A.*2d 135 (App.Div.1993), of his pre-existing back injury and subsequent shoulder lesion/mass with the injuries allegedly sustained in the accident that gave rise to this suit.

The physician's certification required by statute as a condition for maintaining a cause of action, *see N.J.S.A.* 39:6A–8a, had been provided by a chiropractor, Dr. David Podell. He certified in general terms that "within a reasonable degree of medical probability [plaintiff] has sustained permanent injury that will have permanent residual sequelae." The certification went on to add: "It is my further opinion ... within a reasonable degree of medical probability, that although further treatment in the future may alleviate some symptomatology, the permanent residuals of the injury cannot be completely resolved by way of further medical treatment intervention and there will always be some aspect of residual permanent injury experienced for the balance of [plaintiff's] lifetime."

As the matter came before the trial court on summary judgment, plaintiff's specific allegations of injuries were recited in his opposing certification as follows:

> Ever since the ... accident, I have continued to suffer from numerous serious injuries, including cervical herniations in my neck and a partially torn rotator cuff in my left shoulder, as evidenced by MRI examinations. Prior to the subject accident, I had never injured or experienced medical problems with my neck or my left shoulder. Similarly, I have not been involved in any traumatic events

subsequent to [ ] November 22, 2000, and, thus, have not re-injured my neck or my left shoulder.

The certification went on to describe the effects of the injuries on plaintiff's lifestyle activities. Plaintiff asserted that the injuries and limitations had been continuous since the accident and he specified two pain medications that he continued to take.

Among the other papers submitted in opposition to the motion were: Dr. Podell's medical report dated March 15, 2004, revising and updating his initial report of April 1, 2002. Both of those documents recited diagnoses of cervical, thoracic, and lumbar spine injuries, and mentioned "right ankle tenosynovitis." The later report added "multiple cervical disc herniations" and "sprain/ strain of the left shoulder with partial tear" to the initial diagnoses. Plaintiff's opposition papers also included a report and office records from Dr. Ira Esformes, M.D.; and an office note and report that plaintiff represented was from a Dr. Gross. Additionally, plaintiff submitted a certification from a podiatrist, Dr. Morris R. Morin, reporting a January 24, 2004 diagnosis of peroneal tendonitis (right foot) for which he had treated plaintiff, and opining that that injury was a result of the November 2000 accident and that "injuries of this type can become permanent." The record discloses hospital emergency room notes entered a week after the accident listing right foot pain and possible Achilles tendonitis.

At oral argument on the motion for summary judgment, plaintiff conceded, as he has before us, that the conditions described as a left shoulder lesion/mass were unrelated to the accident, but he has continued to assert that the rotator cuff tear in that shoulder was a separate, related injury.

In deciding the matter adversely to plaintiff, the motion judge stated: "[T]here are no objective tests that indicate [plaintiff] has a permanent injury that will not heal." Referring to the MRI-diagnosed C5–6 and C6–7 herniations, the judge observed:

No one on this record who is competent to testify about what that means has causally connected that to the accident. There is nothing from an orthopedist, neurologist or any other competent medical doctor to tell us how that objectively

was causally connected to the accident and objectively how it is a permanent injury that will ... not heal and ... will have an effect on [plaintiff's] life.

He did go to very competent orthopedists, Dr. Esformist and Dr. Gross, each of whom ... know[s] how to make a report concerning motor vehicle accidents and how one must phrase the findings to indicate causal connection. Neither one of them has done that at all.

And as my opinion in *Chun* indicates, a chiropractor does not have the credentials, has no education that would allow for that person to specify anything permanent occurring on the interior of any person's body or to diagnose or project whether it will or can heal, because the only treatment a chiropractor is permitted is external manipulation of the spine, and that's it. Certainly can't talk about a shoulder.

And certainly the seriousness of Mr. Afram's concurrent infection and mass that had to be excised from his shoulder, and how that affected his ability to move, has a significant bearing on whether an MRI that is said to have shown a partial rotator cuff tear, which nobody, again, causally connects to this accident, but giving him the benefit of the doubt and saying it does, nobody has indicated on this record in competent form how this partial rotator cuff tear would affect a human being and whether or not it's permanent and how it interacted with the serious problem he had with surgeries to take out the mass and the infection, and how ... the consequences of that surgery affect his ability to do the things he says he now can't do.

There is no objective evidence on this record that this Court could allow to go to a fact-finder, unfortunately.

The judge went on to find that plaintiff's showing of serious impact upon his lifestyle had also been inadequate, and concluded by "incorporat[ing] the statements I've made here and my *Chun v. Henick* opinion ... into this order which will grant the summary judgment." In reaching her determination, the motion judge also noted, in respect of the foot injury, that she was "not satisfied that a podiatrist is a person who can say that this is permanent when what he does is give injections for pain that has intermittently occurred and been treated since the accident."

The motion judge had handed down the unpublished opinion in *Chun v. Henick* some fifteen months earlier. In it, she provided a negative answer to the question whether, under the requirements of *N.J.S.A.* 39:6A–8a, "a plaintiff [could] proceed to trial on a claim of permanency when supported only by a chiropractic opinion."

In reaching that result, the judge posited dictionary definitions of "physician" and "chiropractor," and analyzed this State's statu-

tory and regulatory schemes for licensure in the context of those definitions. She determined:

> Chiropractors simply are not permitted to diagnose or treat the systems and functions of the body that physicians are trained and statutorily licensed to do[,] *N.J.S.A.* 45:9–18; *N.J.A.C.* 13:44–1, *et seq.* [, and] are also not permitted to perform the panoply of objective diagnostic tests that physicians are obliged to use and which the AICRA statute requires before an opinion on permanency can be given[,] *N.J.S.A.* 45:9–14.5; *N.J.S.A.* 39:6A–8. [(Footnotes omitted.)]

and concluded that

> New Jersey statutes in all fields use the word physician only in reference to a medical doctor (M.D.) or osteopath (D.O.) * * * The New Jersey legislature has explicitly used the word chiropractor in any statute in which they meant to permit a chiropractor and a physician to do certain things. * * * No statute has been construed to infer or impute chiropractor into the word physician especially where the objective of the statute is to restrict rights to only medically cognizable objectively permanent injuries to the interior of the body's systems or functions. * * *
>
> A chiropractor would be viewed in the same manner as would a lay person, as practicing medicine without a license were he/she to offer the type of opinions required to prove permanency pursuant to AICRA, and thus could be subject to fraud claims. * * *
>
> The overwhelming evidence in common law and the express reading of the statute compel this court to conclude that a chiropractor is not a "physician" under *N.J.S.A.* 39:6A–8 and thus cannot offer expert testimony at trial to support a claim for permanent injuries under AICRA. (Footnotes and citations omitted.)

In contradistinction to this view, another trial court, in a published opinion almost two years earlier, *Pensabene v. Straus,* 342 *N.J.Super.* 196, 775 *A.*2d 795 (Law Div.2001), had decided that a chiropractor is qualified to provide the certification required by statute. Except to cite *Pensabene* in a footnote and state "respectful[] disagree[ment] with [its] analysis[,]" the motion judge in this matter did not discuss the rationale of that case. Nor, in disposing of the instant motion, did she cite or discuss *Olarte v. Crocker,* 380 *N.J.Super.* 203, 881 *A.*2d 776 (Law Div.2002), decided several months before the decision in *Chun* and approved for publication a year before the decision in the instant matter. The trial court in *Olarte* reached a similar conclusion to that articulated in *Pensabene,* on "arguments raised [that] were not addressed in *Pensabene*," *id.* at 207, 881 *A.*2d 776, the focus of which included

the motion judge's approach in the instant matter and went beyond. *See id.* at 203–213, 881 *A.*2d 776.

After studying the matter in the light of the written and oral arguments of the parties, we hold the views expressed by the trial courts in *Pensabene* and *Olarte* to be valid and controlling on the question whether a chiropractor's certification is adequate to satisfy the requirements of *N.J.S.A.* 39:6A–8a, and we reject the rationale and conclusion of the motion judge in this case on that question. In short, we agree substantially with the rationales articulated by Judges Sweeney and DeLuccia in *Pensabene* and *Olarte* respectively, and we apply them generally to conclude that chiropractors are qualified under the statute to render opinions on causation and permanency in respect of the types of injuries they treat.

Notwithstanding that issues were raised before the trial court both as to whether plaintiff had satisfied the first-and second-prong tests of *Oswin v. Shaw,* 129 *N.J.* 290, 609 *A.*2d 415 (1992), to qualify his injuries as sufficiently serious to satisfy statutory standards, and as to whether the requirements of *Polk* had been met, it is clear from the motion judge's oral opinion that none of those issues were addressed in more than passing fashion as she proceeded to decide the summary judgment motion primarily based upon the chiropractor-qualification issue. Accordingly, now that we have determined that a chiropractor's certification satisfies the statute's requirements for the reasons stated in *Pensabene* and *Olarte,* the matter must be remanded for full consideration of the other issues raised. Both parties, on oral argument before us, conceded that need if the trial court's determination on the chiropractor-qualification question were reversed.

The trial court must now determine, in the light of our rejection of the motion judge's view disallowing a chiropractor's opinion to satisfy the requirements of the statute, the significance of that physician's view, along with the others expressed, in deciding whether plaintiff's prima facie showings allow him to survive a summary judgment motion. Of course, in considering the remain-

ing issues, the trial court and the parties will be governed by the recent decisions of the Supreme Court in *DiProspero v. Penn*, 183 *N.J.* 477, 874 *A.*2d 1039 (2005), and *Serrano v. Serrano*, 183 *N.J.* 508, 874 *A.*2d 1058 (2005), as well as our decision in *Juarez v. J.A. Salerno & Sons*, 379 *N.J.Super.* 91, 876 *A.*2d 901 (App.Div.2005).

Reversed and remanded.