874 A.2d 1058

OCTAVIO SERRANO, PLAINTIFF–APPELLANT, v. JACQUELINE
SERRANO, JESSICA M. VIRUET AND ALICIA RODRIGUEZ,
DEFENDANTS–RESPONDENTS.

Argued November 29, 2004—Decided June 14, 2005.

*Daniel E. Rosner* argued the cause for appellant (*Mr. Rosner,* attorney; *Michael L. Saile, Jr., Elizabeth C. Vogelsong* and *Adam M. Smallow,* on the briefs).

*Francis X. Ryan* argued the cause for respondent Jacqueline Serrano (*Green, Lundgren & Ryan,* attorneys; *Mr. Ryan* and *Pina M. Vricella,* on the brief).

*Erin R. Thompson* argued the cause for respondents Jessica M. Viruet and Alicia Rodriguez (*Powell, Birchmeier & Powell,* attorneys).

*Richard Wildstein* submitted a brief on behalf of *amicus curiae* Association of Trial Lawyers of America–New Jersey (*Goldstein, Ballen, O'Rourke & Wildstein,* attorneys).

*Thomas P. Weidner* submitted a brief on behalf of *amici curiae* Insurance Council of New Jersey, American Insurance Association and Property Casualty Insurers Association of America (*Windels Marx Lane & Mittendorf,* attorneys).

Justice ALBIN delivered the opinion of the Court.

In *DiProspero v. Penn,* decided today, we held that an automobile accident victim subject to the limitation on lawsuit threshold need only prove that her injuries satisfy one of the six statutorily defined threshold categories in the Automobile Insurance Cost Reduction Act (AICRA) to sue for pain and suffering damages. 183 *N.J.,* 477, 480–82, 874 *A.*2d 1039, 1041–42 (2005). We further held that the Legislature did not intend to impose on the victim the additional requirement—not found in the statute—of proving that her injuries caused a serious impact on her life. *Id.* at 481–82, 874 *A.*2d at 1041–42. In particular, we decided that the Legislature did not intend to apply to AICRA the serious life impact test enunciated in *Oswin v. Shaw,* 129 *N.J.* 290, 609 *A.*2d 415 (1992), which construed a completely different predecessor threshold statute. *Id.* at 481–82, 874 *A.*2d at 1042. We reached that conclusion based on a plain reading of AICRA's limitation on lawsuit threshold, its legislative history, a comparative analysis of

the old and new thresholds, and our recognition that the Legislature made a policy decision not to import the *Oswin* standard into the new threshold. *Id.* at 481–82, 874 *A.*2d at 1041–42.

This appeal raises an issue similar to the one addressed in *DiProspero, supra.* In this case, the appellate panel ruled that plaintiff had to prove not only that his injuries met one of the statutorily defined categories in the limitation on lawsuit threshold, but also a wholly new serious injury standard. As we rejected importing a judicially-crafted serious life impact test into AICRA's threshold in *DiProspero, supra,* we also reject this new test created by the appellate panel. As we noted in *DiProspero, supra,* the Legislature considered the injuries defined in *N.J.S.A.* 39:6A–8(a) to be serious by their very nature. 183 *N.J.* at 497–98, 874 *A.*2d at 1051–52. We will not substitute our judgment for that of the Legislature and write a new statute. We, therefore, hold that in order to recover noneconomic damages, an accident victim has to prove only an injury defined in *N.J.S.A.* 39:6A–8(a), and does not have to clear the additional hurdle of proving a "serious injury."

## I.

We summarize the facts in the light most favorable to plaintiff Octavio Serrano, whose case was dismissed on summary judgment. *R.* 4:46–2(c); *Brill v. Guardian Life Ins. Co. of Am.,* 142 *N.J.* 520, 540, 666 *A.*2d 146 (1995).[1] On October 22, 1999, plaintiff, a twenty-one-year-old unemployed forklift operator, was a front-seat passenger in a minivan driven by his wife, defendant Jacqueline Serrano. While making a left-hand turn from Chestnut Avenue onto State Street in Vineland, the minivan collided with a car traveling in the opposite direction on Chestnut. That car was

---

[1] The facts in this case are provided in greater detail in the decision of the Appellate Division. *Serrano v. Serrano,* 367 *N.J.Super.* 450, 452–56, 843 *A.*2d 358 (App.Div.2004).

driven by defendant Jessica Viruet and owned by defendant Alicia Rodriguez.

Plaintiff hit his head on the van's window, but did not lose consciousness. He was transported by ambulance to the emergency room of Newcomb Medical Center, where he was treated for abrasions to his scalp and for back pain. The hospital took x-rays of plaintiff's back and found no fractures or dislocations to his spinal area. That same day, plaintiff was discharged from the emergency room with instructions to wear a neck brace and take Tylenol.

The next week, plaintiff visited Dr. Marshall Pressman, D.O., who diagnosed him as suffering from acute neck and back strain, right temporomandibular joint dysfunction (TMJ) [2] with audible clicking, and possibly right carpal tunnel syndrome.[3] Dr. Pressman also noted a prior history of impaired sensation to plaintiff's right wrist. Dr. Pressman prescribed anti-inflammatory medication, Transcutaneous Electrical Nerve Stimulation (TENS),[4] the use of ice, and an exercise regimen. Another series of x-rays revealed no injury to plaintiff's spinal area. Over the course of two years, plaintiff was treated by Dr. Pressman and his associate, Dr. Martin Kessler, M.D., who had him undergo a round of physical therapy. Although plaintiff continued to complain of lower back and neck pain, an MRI scan showed no disc herniations.

---

[2] The temporomandibular joint "relat[es] to the temporal bone and the mandible." *Stedman's Medical Dictionary* 1560 (25th ed. 1990). The temporal bone is a "three-part bone[ ] forming the side[ ] and base of the skull." *Webster's II New College Dictionary* 1135 (2001). The mandible is the "lower jaw . . . ." *Id.* at 664.

[3] "Carpal tunnel syndrome is a disorder caused by compression at the wrist of the median nerve supplying the hand, causing *numbness and tingling.*" 2 *Gale Encyclopedia of Medicine* 599 (1999).

[4] TENS "is a noninvasive, drug-free *pain management* technique. By sending electrical signals to underlying nerves, the battery-powered TENS device can relieve a wide range of chronic and acute *pain.*" *Id.* at 1028.

Because plaintiff complained of persistent right-hand discomfort, he was referred in January 2000 to Dr. Robert Carabelli, M.D., who performed an EMG study and diagnosed plaintiff with right carpal tunnel syndrome. Dr. Carabelli characterized the carpal tunnel syndrome as "new onset," not longstanding enough to have caused nerve damage.

In February 2002, Dr. Robert J. Labaczewski, D.O., examined plaintiff and diagnosed him as suffering from TMJ, neck and back strain and sprain, and right carpal tunnel syndrome. Dr. Labaczewski further stated that, to a reasonable degree of medical certainty, plaintiff's carpal tunnel was causally related to the accident.

At the request of defendant Jacqueline Serrano's attorney, in April 2002, Dr. Gary Goldstein, M.D., examined plaintiff, who still complained of neck and back pain, numbness and cramping of his right hand, and pain and clicking in his jaw. Like the other doctors, Dr. Goldstein diagnosed plaintiff with TMJ, neck and back sprain and strain syndrome, and right carpal tunnel syndrome. Dr. Goldstein opined that the injuries were caused by the accident and were permanent.

Plaintiff testified in a deposition to the life-altering effects of the accident. He stated that he suffers neck, back, and wrist pain while performing the most routine movements, such as kneeling, squatting, reaching, bending, lifting objects, and running. His pain increases when bicycling, driving, doing household chores, and carrying out child-care responsibilities. The pain in his jaw makes eating certain foods more difficult and yawning widely causes an audible clicking. Additionally, he can no longer lift heavy objects or put much pressure on his right wrist. Although before the accident plaintiff routinely engaged in recreational activities, since then he has stopped playing basketball, lifting weights, working on his cars as a hobby, and swimming during the summer.

Plaintiff submitted only one certification from a physician who treated or examined him, as required by *N.J.S.A.* 39:6A–8(a). Dr.

Kessler certified that plaintiff's back and neck injuries were permanent and would "not heal to function normally with further medical treatment." Plaintiff did not file a physician certification attesting that his carpal tunnel syndrome or TMJ were permanent injuries.

As a result of the accident, plaintiff filed a negligence action against defendants, alleging that he now suffers from several permanent injuries and seeking, among other things, noneconomic damages. Defendants filed for summary judgment, claiming that plaintiff did not suffer injuries that have a serious impact on his life and that his suit was barred by the limitation on lawsuit threshold in *N.J.S.A.* 39:6A–8(a). The trial court granted the motion because plaintiff "failed to demonstrate the type of significant impact that the case law contemplates in order to meet the requirements of the verbal threshold statute." The court found that plaintiff's recreational activities had not "consumed" his life and that their curtailment was not significant.[5]

The Appellate Division affirmed, but for reasons different from those given by the trial court. The appellate panel did not address plaintiff's argument that he met the serious life impact test or his alternative argument that *James v. Torres,* 354 *N.J.Super.* 586, 588, 808 *A.*2d 873 (App.Div.2002), *certif. denied,* 175 *N.J.* 547, 816 *A.*2d 1049 (2003), incorrectly imported *Oswin's* serious life impact test from the 1988 verbal threshold into AICRA's new threshold. *Serrano v. Serrano,* 367 *N.J.Super.* 450, 452, 843 *A.*2d 358 (App.Div.2004). Declining to "join the fray" over the viability of the serious life impact standard, the panel instead interposed a completely new "serious injury" standard, distinguishing it from the serious life impact standard. *Id.* at 459–60, 461, 843 *A.*2d 358. The panel foreclosed discussion about serious life impact by reasoning that "plaintiff's injuries, if believed, were not *the serious type* that would vault his case over the verbal threshold simply by

---

[5] In granting summary judgment, the trial court did not reach the issue of whether plaintiff's injuries were permanent.

reliance on the medical opinions of permanency." *Id.* at 460, 843 A.2d 358 (emphasis added). The panel concluded that plaintiff had to prove not only that he suffered an injury that satisfied the language of AICRA's limitation on lawsuit threshold, but also that he suffered a serious injury. *Id.* at 460–61, 843 A.2d 358. The panel, however, did not construct a standard for determining what constituted a serious injury.

We granted plaintiff's petition for certification. *Serrano v. Serrano,* 180 *N.J.* 357, 851 A.2d 650 (2004). We also granted *amicus curiae* status to the Association of Trial Lawyers of America–New Jersey, the Insurance Council of New Jersey, the American Insurance Association, and the Property Casualty Insurers Association of America.

## II.

### A.

In construing the 1988 verbal threshold in *Oswin, supra,* we held that an accident victim had to prove not only that he suffered an injury defined in one of the nine threshold categories, but also that the injury caused a serious impact on his life. 129 *N.J.* at 318, 609 A.2d 415. We also imposed the requirement that the plaintiff prove by objective credible evidence that the injury fell into one of those threshold categories. *Id.* at 314, 609 A.2d 415. AICRA's limitation on lawsuit threshold replaced the 1988 verbal threshold with fewer categories of injuries and more objective standards. *DiProspero, supra,* 183 *N.J.* at 488, 874 A.2d at 1046. Unlike the 1988 verbal threshold, the new threshold no longer allows an accident victim to recover for mere fractures and nonpermanent injuries. *Id.* at 488–89, 874 A.2d at 1046. The new threshold has incorporated *Oswin*'s requirement that the injury be proven by objective credible evidence. *Id.* at 495–96, 874 A.2d at 1050. Additionally, it requires that the plaintiff file a certification by a physician attesting, "under penalty of perjury," that the injury satisfies one of the threshold categories. *Id.* at 488–89, 874

*A.*2d at 1046. The limitation on lawsuit threshold, however, does not contain in its statutory language *Oswin*'s serious life impact standard. *Id.* at 493–94, 874 *A.*2d at 1049.

In *DiProspero, supra,* we declined to graft *Oswin's* standard onto AICRA's threshold. We recognized that, generally, the plain language of a clearly written statute is the best indicator of legislative intent. *Id.* at 492, 874 *A.*2d at 1048. We were mindful that the Legislature has on many occasions incorporated a previously enunciated judicial standard into a new statute. *Id.* at 495, 874 *A.*2d at 1050. In that respect, we noted that the Legislature chose to include *Oswin's* objective evidence test but not its serious life impact test in the new threshold statute. *Id.* at 495–96, 874 *A.*2d at 1050. Those telling facts strongly pointed to the conclusion that the Legislature deliberately chose not to introduce the serious life impact standard into the limitation on lawsuit threshold. *Ibid.* Our review of the statute's preamble, the Sponsors' Statement, and the Governor's conditional veto did not persuade us otherwise. *Id.* at 495–505, 874 *A.*2d at 1050–56.

We also acknowledged the obvious—that the final version of the limitation on lawsuit threshold was the product of the legislative process. *Id.* at 505, 874 *A.*2d at 1056. The Joint Committee on Automobile Insurance Reform that drafted the new threshold considered alternatives pressed by competing special interest groups and reviewed similar types of legislation in other states. *Id.* at 505–06, 874 A.2d at 1056–57 (citing *Deliberations with regard to automobile insurance reform: Committee Meeting of the Joint Committee on Automobile Insurance Reform,* Leg. 208, at 79–113 (Mar. 26, 1998) (*L.* 1998, *c.* 21), *available at* http://www.njleg.state.nj.us/legislativepub/Pubhear/032698dd.PDF). As with much legislation, the final draft was the result of debate and compromise. In choosing the precise language of the new statute, the Legislature defined the degree to which it restricted the right to sue for noneconomic damages. The limitation on lawsuit

threshold balanced the right of accident victims to have access to the courts with the need to lower the overall cost of automobile insurance.

In that regard, the limitation on lawsuit threshold was only one piece of a much larger picture. AICRA represented a comprehensive legislative approach aimed at reducing insurance costs to consumers. In addition to the new threshold, AICRA created a new, less expensive basic insurance policy, a new dispute resolution procedure, and established an Insurance Fraud Prosecutor. *Id.* at 489–90, 874 *A.*2d at 1046–47 All of these changes were designed to lower costs to both insureds and insurers alike.

On its face, the limitation on lawsuit threshold forecloses a recovery for frivolous injuries. The threshold bars recovery for pain and suffering unless the plaintiff suffers an injury that results in 1) "death;" 2) "dismemberment;" 3) "significant disfigurement or significant scarring;" 4) "displaced fractures;" 5) "loss of a fetus;" or 6) "a permanent injury within a reasonable degree of medical probability, other than scarring or disfigurement." *N.J.S.A.* 39:6A–8(a). The statute explains that "[a]n injury shall be considered permanent when the body part or organ, or both, has not healed to function normally and will not heal to function normally with further medical treatment." *Ibid.* As noted, those injuries must be proven by objective clinical evidence. *Ibid.*

AICRA's preamble states that the legislation "provides for a revised lawsuit threshold for suits for pain and suffering which will eliminate suits for injuries which are not serious or permanent, including those for soft tissue injuries. . . ." *N.J.S.A.* 39:6A–1.1(b). We determined that the preamble's language, "which speaks in the disjunctive" of injuries that are not serious or permanent, is "merely descriptive of the six statutorily defined threshold categories of *N.J.S.A.* 39:6A–8(a)." *DiProspero, supra,* 183 *N.J.* at 497–98, 874 *A.*2d at 1051–52. Of those six categories, only a displaced fracture could possibly be described as a non-permanent injury. *Ibid.* The statute and its history strongly suggest that the Legislature considered all of the threshold injuries to be serious injuries. *Ibid.*

That conclusion is fortified by Governor Whitman's conditional veto message in which she stated that the limitation on lawsuit threshold " 'replaces the existing lawsuit threshold, under which temporary, nonserious injuries qualify, with a requirement that fractures be displaced and that other injuries be serious enough never to heal sufficiently to regain normal function.' " *Id.* at 503–04, 874 *A.*2d at 1055–56 (quoting *Governor's Recommendations for Reconsideration Statement to Senate Bill No. 3,* at 3 (Apr. 27, 1998) (*L.* 1998, *c.* 21), *available at* http://www.njstatelib.org/NJLH/LH9899/PDFDOCS/9899/S3_1.PDF). The old verbal threshold permitted suits for pain and suffering for any "fracture" and for "a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute that person's usual and customary daily activities for not less than 90 days during the 180 days immediately following the occurrence of the injury or impairment...." *L.* 1988, *c.* 119, § 6. The new threshold eliminated those categories of injuries. *DiProspero, supra,* 183 *N.J.* at 488–89, 874 *A.*2d at 1046. Now, only displaced fractures and permanent injuries to a body part or organ, proven by objective evidence, can vault the threshold. *Id.* at 488–89, 874 *A.*2d at 1046 (citing *N.J.S.A.* 39:6A–8(a)).

From Governor Whitman's message, it appears that she believed that the new threshold categories identified serious injuries. The Governor requested a number of adjustments to AICRA through her conditional veto, but none to the limitation on lawsuit threshold. *Id.* at 503, 874 *A.*2d at 1055. Had Governor Whitman intended to superimpose onto the new threshold's statutory requirements an additional serious life impact or serious injury standard, it is unlikely that she would have done so by remaining silent on this subject in her conditional veto message.

In *DiProspero, supra,* we could not divine from the new threshold's clear language and history a legislative intent that this Court import the *Oswin* standard into AICRA. *Id.* at 505–06, 874 *A.*2d 1056–57. Similarly, we cannot conclude that the Legislature

intended this Court to create a new subjective standard of serious injury and to transpose it onto the statutorily defined threshold categories. It is true that an overriding policy objective of AICRA was to lower insurance costs for consumers. But the Legislature balanced that objective with other important values, one of which was to allow accident victims, subject to the lawsuit threshold, access to the courts. The Legislature did not eliminate the right to sue for pain and suffering—a step that presumably would have driven costs down—but rather set certain limits in the statute for allowing such suits. The new threshold reflects policy choices made by the Legislature in a process that involved negotiations, concessions, and consensus. We should not tinker with those choices by substituting a purported cost-cutting judicial approach that will limit claims but cannot be justified by AICRA's threshold language or its history.

There is a fine line between interpreting statutory language and engrafting a judicial standard over that language. In this case, we conclude that the appellate panel created a judicial standard not intended by those who wrote and enacted the statute. It is clear to us that the Legislature intended to eliminate lawsuits for frivolous injuries, and did so by requiring a plaintiff to prove by objective clinical evidence, supported by a physician certification, under penalty of perjury, an injury fitting into one of the six statutorily defined threshold categories.

## III.

In this case, the trial court granted summary judgment in favor of defendants on the basis that plaintiff's injuries had not caused a serious impact to his life. The Appellate Division affirmed on a different basis—that plaintiff's injuries were not serious injuries. We hold that the Legislature considered the injuries enumerated in *N.J.S.A.* 39:6A–8(a) to be serious by definition. Accordingly, we will not superimpose a new serious injury standard onto that statute.

We conclude that plaintiff need only prove that he suffered an injury described in *N.J.S.A.* 39:6A–8(a)'s limitation on lawsuit threshold to recover noneconomic damages. In this case, plaintiff must prove that he suffers from a permanent injury to a body part or organ. Because both courts applied the wrong legal standard in deciding the summary judgment motion, we remand to the trial court for proceedings consistent with this opinion.

Justice RIVERA–SOTO, concurring in the result.

For the reasons expressed in my concurrence in *DiProspero v. Penn,* 183 *N.J.* 477, 874 *A.2d* 1039 (2005), also decided today, I concur in the result reached in this case.

*For reversal and remandment*—Chief Justice PORITZ, and Justices LONG, ZAZZALI, ALBIN, WALLACE, and RIVERA–SOTO—6.

*Opposed*—None.