877 A.2d 307 (2005)
379 N.J. Super. 169
Maria BELTRAN, Plaintiff-Appellant,
v.
Reginald DeLIMA and Maria Morais, Defendants-Respondents, and
Ismael Perez and Christine Cotto, Defendants.
Judith F. Imerman, Plaintiff-Appellant,
v.
Alice Munoz, Defendant-Respondent, and
State Farm Insurance Companies, Defendant.
Superior Court of New Jersey, Appellate Division.
Argued telephonically June 29, 2005 and June 30, 2005.
Decided July 11, 2005.
*308 Paul J. Hirsh, Morristown, argued the cause for appellant Maria Beltran in A-6056-03T2 (Mr. Hirsh, on the brief).
Cynthia Craig, Chatham, argued the cause for appellant Judith F. Imerman in A-6673-03T1 (Blume, Goldfaden, Berkowitz, Donnelly, Fried & Forte, attorneys; Daryl L. Zaslow, of counsel and on the brief).
Jeanne M. Walsh, Wayne, argued the cause for respondents Reginald DeLima and Maria Morais in A-6056-03T2 (Ms. Walsh, on the brief).
Raymond V. King, Brick, argued the cause for respondent Alice Munoz in A-6673-03T1 (Mr. King, of counsel and on the brief).
Before Judges STERN, CUFF and PAYNE.
Argued telephonically June 29, 2005 (A-6673-03T1) and June 30, 2005 (A-6056-03T2).
The opinion of the court was delivered by
PAYNE, J.A.D.
On June 14, 2005, the New Jersey Supreme Court decided DiProspero v. Penn, 183 N.J. 477, 874 A.2d 1039 (2005), and Serrano v. Serrano, 183 N.J. 508, 874 A.2d 1058 (2005), and by doing so, resolved a longstanding controversy over the proper interpretation of N.J.S.A. 39:6A-8a, a provision of the 1998 Automobile Insurance Cost Reduction Act (AICRA), N.J.S.A. 39:6A-1.1 to -35, that governs the right to recovery for non-economic losses of those to whom the "limitation on lawsuit" threshold set forth in that subsection of the Act applies. The statute requires as a condition of recovery that the injured claimant have
sustained a bodily injury which results in death; dismemberment; significant disfigurement or significant scarring; *309 displaced fractures; loss of a fetus; or a permanent injury within a reasonable degree of medical probability, other than scarring or disfigurement.
[N.J.S.A. 39:6A-8a.]
It states further that:
An injury shall be considered permanent when the body part or organ, or both, has not healed to function normally and will not heal to function normally with further medical treatment.
[Id.]
In order for this tort option provision of the Act to be satisfied, the statute requires, within a specified time frame, that the plaintiff provide defendant with a physician's certification, given under penalty of perjury, that objective clinical evidence demonstrates that the plaintiff has sustained a permanent injury of the type specified in the statute. Id.
Prior to the passage of AICRA, an analogous "verbal threshold" provision contained in the 1988 New Jersey Automobile Reparation Reform Act had been interpreted by the Supreme Court in Oswin v. Shaw, 129 N.J. 290, 318, 609 A.2d 415 (1992) to require evidence that the plaintiff's injury fit within one of the categories described in that earlier statute, and also that the plaintiff had suffered a serious life impact as the result of the injury. Following AICRA's passage, members of the bar challenged the continued viability of the two-pronged Oswin analysis, arguing that its adoption was not reflected in the language or intent of the new limitation on lawsuit provision.
In James v. Torres, 354 N.J.Super. 586, 588, 808 A.2d 873 (App.Div.2002), after consideration of contrary arguments, we found that the serious impact requirement of Oswin survived the passage of AICRA and was implicitly incorporated within it. See also Rios v. Szivos, 354 N.J.Super. 578, 580, 808 A.2d 868 (App.Div.2002). Although the denial of certification in James, 175 N.J. 547, 816 A.2d 1049 (2003), suggested to some the Supreme Court's concurrence in the view we expressed in that case, it was not a disposition on the merits. Moreover, challenges to our interpretation persisted, which were reflected in subsequent decisions in our court, including the dissent of Judge Weissbard that led to the appeal in DiProspero. See DiProspero v. Penn, 2004 WL 439350, *3 (App.Div.2004). See also Compere v. Collins, 352 N.J.Super. 200, 799 A.2d 721 (Law Div.2002), upon which Judge Weissbard relied.
Justice Albin, writing for the Court in both DiProspero and Serrano, rejected our interpretation of AICRA, finding that "nothing in AICRA's preamble, its legislative history, or its policy objectives suggests that the Legislature intended this Court to write in [a serious life impact] standard." DiProspero, supra, 183 N.J. at 506, 874 A.2d 1039. See also Serrano, supra, 183 N.J. at 514-16, 874 A.2d 1058.
In implementing the Supreme Court's decisions, we have now reviewed a number of appeals pending in this court for the purpose of determining whether summary orders remanding the cases for trial in light of DiProspero and Serrano should be entered. Our review has raised the issue of the retroactivity of the Supreme Court's decisions and, in turn, prompted our request that the issue be argued before us. Those arguments have taken place separately in the two appeals that are the subjects of this opinion, which we have consolidated for the limited purpose of addressing the issue. We stress that our focus is solely upon cases on appeal from final judgments that are now pending before us. We have not considered whether DiProspero and Serrano should be applied to cases that have been disposed of and are no longer pending in the trial *310 courts or on appeal and thus are not in the "pipeline."
Although as we have stated, we find the Court's decisions in DiProspero and Serrano to have been foreshadowed from the outset as the result of the dispute as to Oswin's applicability to AICRA that arose almost immediately upon that statute's passage, the Supreme Court's decisions undeniably mark a departure from our contrary opinion in Jamesa decision that has been widely followed by trial judges and by us. For that reason, we find the Supreme Court to have established a new rule of law as to which retroactivity analysis is appropriate. Frazier v. New Jersey Mfrs. Ins. Co., 142 N.J. 590, 606, 667 A.2d 670 (1995); State v. Burstein, 85 N.J. 394, 403, 427 A.2d 525 (1981) (if principle of law is not new, a retroactivity analysis is not required).
Such analyses often commence with the statement that "[g]enerally, judicial decisions are applied retroactively to all civil matters that have not reached final judgment." Henderson v. Camden Cty. Municipal Utility Auth., 176 N.J. 554, 561, 826 A.2d 615 (2003); Frazier, supra, 142 N.J. at 606, 667 A.2d 670; Chase Manhattan Bank v. Josephson, 135 N.J. 209, 235, 638 A.2d 1301 (1994); County of Essex v. Waldman, 244 N.J.Super. 647, 662, 583 A.2d 384 (App.Div.1990), certif. denied, 126 N.J. 332, 598 A.2d 890 (1991). However, that principle is neither unqualified nor universally applicable, and for that reason, we must consider whether, in the context of AICRA and our resolution of presently pending appeals concerning its interpretation, it is appropriate to apply the rule of DiProspero and Serrano purely prospectively, only to future cases and the two matters in which the rule was announced or, in addition to the foregoing, to all matters in which avenues of direct review have not been exhausted.[1]See Burstein, supra, 85 N.J. at 402-03, 427 A.2d 525 (enumerating approaches).
Which of these approaches is taken depends largely on "the court's view of what is just and consonant with public policy in the particular situation presented." State v. Nash, 64 N.J. 464, 469, 317 A.2d 689 (1974). Most frequently "a weighing of the various policies involved [has] called for retrospectivity," Darrow v. Hanover Twp., 58 N.J. 410, 413-14, 278 A.2d 200 (1971). Consequently, retrospectivity is acknowledged to be the "traditional" rule, see, e.g., Mirza v. Filmore Corp., 92 N.J. 390, 396, 456 A.2d 518 (1983)....
[Coons v. American Honda Motor Co., Inc., 96 N.J. 419, 425, 476 A.2d 763 (1984), cert. denied, 469 U.S. 1123, 105 S.Ct. 808, 83 L.Ed.2d 800 (1985) (Coons II).]
The policy considerations relevant to a retroactivity analysis commonly include whether there has been (1) "justifiable reliance by the parties and the community as a whole on prior decisions," (2) whether the purpose of the new rule will be advanced by retroactive application, and (3) any adverse effect retrospectivity may have on the administration of justice. Id. at 426, 476 A.2d 763. See also Frazier, supra, 142 N.J. at 606, 667 A.2d 670.
We view the balance of these policy factors as tipping toward a finding of pipeline retroactivity in cases involving the interpretation of N.J.S.A. 39:6A-8a. As we have stated, we find it difficult to fault *311 those who relied upon James as setting forth the proper interpretation of the limitation on lawsuit provisions of N.J.S.A. 39:6A-8a, particularly after certification was denied to that decision. Nonetheless, because an issue of statutory construction remained that the Supreme Court had not addressed, it could not be claimed that the issue was in any respect "settled," particularly after the parties' appeal was perfected in DiProspero and certification was granted in Serrano on May 21, 2004. Id. 180 N.J. 357, 851 A.2d 650 (2004). See Montells v. Haynes, 133 N.J. 282, 297-98, 627 A.2d 654 (1993).[2]Compare Henderson, supra, 176 N.J. at 562, 826 A.2d 615; Reuter v. Ft. Lee Borough Council, 167 N.J. 38, 42, 768 A.2d 769 (2001); SASCO 1997 NI, LLC v. Zudkewich, 166 N.J. 579, 594, 767 A.2d 469 (2001) (applying new interpretations of statutes prospectively). It would be unfair not to accord the Supreme Court's newly-announced rule pipeline retroactivity to those multitudinous cases in which challenges to the utilization of the Oswin model and the interpretation of Oswin's precepts remain pending,[3] simply because they did not constitute the vehicle for the Supreme Court's decision.
Moreover, we note AICRA's remedial purpose. "AICRA was a comprehensive legislative package with a multi-pronged approach aimed at achieving the goals of containing costs, rooting out fraud within the system, and ensuring a fair rate of return for insurers." DiProspero, supra, 183 N.J. at 488, 874 A.2d 1039 (citing N.J.S.A. 39:6A-1.1(b)). N.J.S.A. 39:6A-8a, the limitation on lawsuit portion of the statute, was designed to establish "rigorous standards" so that "only honest and reliable medical evidence and testing procedures would be introduced to prove that an injury [met] the threshold," DiProspero, supra, 183 N.J. at 489, 874 A.2d 1039, thereby strengthening the evidential requirements of the statute and keeping down the costs of auto insurance premiums. N.J.S.A. 29:6A-1.1(b). See also Governor's Recommendations for Reconsideration Statement to Senate Bill No. 3, at 3-4 (April 27, 1998) (L. 1998, c. 21). Arguably, these purposes would be thwarted if we were to refuse to apply provisions of AICRA that the Supreme Court has determined to be clear and explicit in a fashion other than as the Legislature apparently intended. See DiProspero, 183 N.J. at 494-95, 874 A.2d 1039 (observing that the Legislature is presumed to be aware of the judicial construction of its statutes, and that a change in statutory language usually implies a purposeful alteration in the law) (citing N.J. Democratic Party, Inc. v. Samson, 175 N.J. 178, 195 n. 6, 814 A.2d 1028, cert. denied, 537 U.S. 1083, 123 S.Ct. 673, 154 L.Ed.2d 582 (2002); Brewer v. Porch, 53 N.J. 167, 174, 249 A.2d 388 (1969) and Nagy v. Ford Motor Co., 6 N.J. 341, 348, 78 A.2d 709 (1951)).
We are mindful of the tsunami effect that retroactive application of DiProspero *312 and Serrano may have on the administration of justice, since our remands may, for a time, overwhelm the calendars of the trial courts, require a focus upon the disposition of aging motor vehicle accident cases at the expense of other pending litigation, create a substantial backlog in matters to be tried, and perhaps lead to the need to reassign judicial personnel until the wave of limitation on lawsuit threshold cases abates, if in fact that occurs. However, we read the Supreme Court's decisions as placing the consequences of any such judicial burden on the Legislature's doorstep as evidence it may wish to consider when pondering whether its manner of resolving the automobile insurance cost crisis achieved its desired goal. As the Court stated:
It was the Legislature's duty to decide what degree of cost savings should be achieved through specific restrictions on the right to sue. In enacting the limitation on lawsuit threshold, it crafted a statute that defined when an accident victim could sue for pain and suffering damages. We should not interfere with the policy choices made by the Legislature. It may be true that there would be fewer successful claims if we were to impose a serious life impact standard on top of the statutory requirements. However, if the Legislature intended that accident victims should have a more difficult hurdle in obtaining a recovery, then it must draft a statute that accomplishes that end. We will not write that statute.
[DiProspero, supra, 183 N.J. at 506, 874 A.2d 1039.]
For these reasons, we apply pipeline retroactivity to DiProspero and Serrano, holding those decisions applicable to all prejudgment matters pending in the trial courts and to those matters that are on direct appeal. Cf. State v. Cummings, 184 N.J. 84, 96-100, 875 A.2d 906 (2005).
We therefore turn to the merits of the appeals before us. In Imerman v. Munoz, a vehicle driven by plaintiff Judith Imerman, a woman in her seventies, was struck on January 9, 2001 by a vehicle driven by Alice Munoz, who allegedly failed to stop at a red light. Imerman claims that as the result of the accident she sustained herniated discs at L2-3, L4-5 and L5-S1, with lumbar radiculopathy at the L4 and L5-S1 nerve roots, intractable back pain, and carpal tunnel syndrome in both wrists, one of which was surgically treated. Although Imerman had been involved in two prior accidents and suffered from orthopedic and neurological conditions associated with aging, including degenerative disc disease and osteoporosis, her treating physicians[4] concluded that, at the time of the accident, she was asymptomatic, and that the accident had caused the manifestation of the objective injuries about which Imerman presently complains.
In ruling in Munoz's favor on the motion for summary judgment filed by Munoz based on Imerman's failure to meet the requirements of N.J.S.A. 39:6A-8a, the motion judge concluded first that the proofs offered by Imerman with respect to her claims of aggravation of a pre-existing *313 injury or condition conformed to the general outline that we set forth in Polk v. Daconceicao, 268 N.J.Super. 568, 575, 634 A.2d 135 (App.Div.1993) (requiring a comparative analysis of plaintiff's pre- and post-accident conditions) and constituted prima facie evidence of permanent injury as statutorily defined. However, the judge nonetheless granted summary judgment on the ground that plaintiff had not met the second prong of Oswin by producing sufficient evidence that her injuries had a significant impact on her life. In light of the Court's opinions in DiProspero and Serrano, we reverse and remand the matter for trial, finding that plaintiff produced prima facie proof of a permanent injury cognizable under N.J.S.A. 6A:39-8a, and that nothing more was required of her.
In Beltran v. DeLima, the car driven by plaintiff Maria Beltran was allegedly struck in the rear on May 15, 2001 as the result of a chain reaction instituted by a vehicle operated by defendant Reginald G. DeLima and owned by defendant Maria Morais. Plaintiff claims that as a result of the accident she sustained a herniated disc at L1-L2, and she offered evidence that suggested the injury was causally related to her accident and was permanent. However, when considering DeLima's motion for summary judgment based on Beltran's failure to meet the requirements of N.J.S.A. 39:6A-8a, the motion judge did not definitively rule whether prima facie evidence of a permanent injury meeting AICRA's statutory requirements had been presented, but instead, he premised his decision on his determination that Beltran had failed to meet Oswin's second prong.
For the reasons that we have expressed previously, summary judgment in Beltran, too, is reversed and the matter is remanded. However, upon remand, we direct that the motion judge hold further argument to determine the sufficiency of Beltran's proofs on the issue of permanent injury.
The orders of summary judgment in Beltran v. Delima and Imerman v. Munoz are reversed, and the matters are remanded for further proceedings in light of this opinion.
NOTES
[1] Because the issue is not presented, we do not here consider whether to give the new rule complete retroactive effect, applying it to all cases, even if final judgments have been entered and avenues of direct appeal have been exhausted. Burstein, supra, 85 N.J. at 403, 427 A.2d 525.
[2] In Montells, the Court's determination to apply a two-year statute of limitations to claims instituted pursuant to New Jersey's Law Against Discrimination was given prospective application because it would have been "unfair" to do otherwise when the law was unsettled and litigants reasonably relied on a six-year statute. Here, where the decision results in an expansion rather than a restriction of the law, considerations of fairness dictate the opposite result in a retroactivity analysis.
[3] In this regard, we note the Court's agreement with our observation in James that construction of Oswin's second prong has been difficult and has led to often conflicting results expressing little consistent rationale. DiProspero, supra, 183 N.J. at 487, 489-91, 874 A.2d 1039.
[4] We were informed at oral argument that the physician's certification submitted on behalf of Imerman pursuant to N.J.S.A. 39:6A-8a was not included in the record on appeal because its sufficiency was not at issue. We are not called upon to determine either in Imerman or in Beltran v. DeLima, which we also decide in this opinion, whether a properly prepared physician's certification alone automatically constitutes prima facie evidence of permanency sufficient to meet the requirements of N.J.S.A. 39:6A-8a, because plaintiffs' attorneys did not take that position. See Rios, supra, 354 N.J.Super. 578, 808 A.2d 868 (overruled on other grounds by DiProspero and Serrano).