884 A.2d 235 (2005)
381 N.J. Super. 22
Danielle DAVIDSON, Plaintiff-Appellant,
v.
Raymond A. SLATER and Deanna L. Slater, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued October 6, 2005.
Decided October 20, 2005.
Steven Jozwiak, Cherry Hill, argued the cause for appellant.
William J. Markwardt, Hamilton, argued the cause for respondents (Kent & McBride, attorneys; Mr. Markwardt, on the brief).
Before Judges CONLEY, WEISSBARD[1] and WINKELSTEIN.
The opinion of the court is delivered by
*236 CONLEY, P.J.A.D.
In this verbal threshold case, defendant was successful in obtaining summary judgment dismissing plaintiff's automobile negligence complaint. The motion judge granted summary judgment because she concluded that plaintiff's proofs did not establish an objective, permanent injury and that her medical expert did not conduct a Polk[2] comparative analysis. The judge thought this was necessary as a threshold matter, because plaintiff had sustained injuries in an accident before the one she sought damages on and another accident after. We disagree on both issues.
Viewed most favorably for plaintiff, Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540, 666 A.2d 146 (1995), the motion record reveals the following. The accident that forms the basis for plaintiff's complaint occurred on August 2, 2001. At the time, she was a passenger in the front seat of a vehicle that was stopped at a red light. As it began to proceed through the intersection, it was rear ended. The force of the impact threw plaintiff forward and then backward and caused significant damage to the vehicle. Her neck and low back were injured. She was taken to the hospital and released. She then began treatment with Dr. Scott Dorfner, who is board certified in internal medicine.
In his December 19, 2002, report, Dr. Dorfner described the course of plaintiff's treatment and progress, and offered his opinion as to her injuries and prognosis:
Since the time of the motor vehicle accident, [plaintiff] has experienced significant low back pain and significant neck and back spasms. The patient initially stated that she was achy from head to toe. There was marked ecchymosis to the right forearm with soft tissue swelling. There was marked cervical, dorsal and lumbar paravertebral muscle spasm. There was decreased range of motion in the cervical and lumbar spine to no more than 70 [percent] of normal.
Because of the patient's significant symptomatology, she was given non-steroidal anti-inflammatory medication. She was given physical therapy in the office consisting of hot packs, electrical stimulation and ultrasound as well as gentle osteopathic manipulation. Because of the patient's symptomatology, MRIs were ordered. I have enclosed copies of those reports[,] which did reveal a disc protrusion at L5-S1 with a straightening of the normal lumbar lordosis. Additionally, the patient did have an MRI performed of the cervical spine. I have enclosed copies of that report which reveal mild degenerative changes at C4-C5 and C5-C6.
The patient was referred for orthopedic consultation to Dr. Richard J. Naftulin of Cherry Hill Orthopedic Surgeons. I have enclosed copies of his reports in which he stated the patient was suffering from post-traumatic cervical and lumbar strain and sprain with myofascitis as well as a possible herniated disc with ultimately the discs being well visualized on MRI. Dr. Naftulin recommended a rehabilitative consultation and electrodiagnostic studies. The patient was seen in rehabilitative consultation *237 by Dr. Aurora T. Delarosa, a rehabilitative specialist. It was her impression that the patient was suffering from chronic cervical, thoracic and lumbar myofascial pain dysfunctions along with cephalgia secondary to cervical myofascial pain dysfunction with median neuropathy across the wrist, possible bilateral carpal tunnel syndrome and lumbosacral radiculitis recommending electrodiagnostic studies.

The patient continued with symptoms consistent with a disc injury. The patient continued with discomfort in the low back most pronounced to the lower extremities describing radicular-type symptoms to the lower extremities as well as what she described as intense bone pain in her low back[,] which was much worse with any weather or exertion. The patient had actually changed jobs from a waitress to a bartender and still experienced significant back pain and leg pain along with which she described as charley horses in both legs. The patient has never regained the final ranges of motion in her cervical or lumbar spine.

She still [sixteen months after the accident] experiences 15 [percent] deficits in the cervical and lumbar spine in all planes. Her straight-leg raising sign is positive at 45 degrees bilaterally. The patient still experiences significant cephalgia and significant myofascial pain syndrome. At this time, she has been released from active care. She will, of course, return on a prn basis. She has become very depressed at times over the ongoing disabilities and her ongoing back pain and has been placed on Paxil CR 12.5 mg daily as well as recommendations being made for an epidural injection. However, the patient states that at this time, she would prefer to defer an epidural injection as she has a fear of the procedure going awry and she will, of course, just continue to modify her activities. She has been given a home exercise program. She has been told to stretch on a regular basis, to utilize non-steroidal anti-inflammatories and, of course, should her disease progress or should her pain become oppressive, that she is to return immediately to the office for further treatment and/or further subspecialty consultations and referrals.

At this time, the injuries she has suffered are permanent. They are the direct result of the motor vehicle accident which occurred on 8/2/01. The patient has been given strict instructions for her follow-up care and it is unknown as to the further progression of her disease state.
FINAL DIAGNOSES:
1. Lumbar disc protrusion at L5-S1.

2. Post-traumatic myofascitis.
3. Post-traumatic cephalgia.
4. Lumbar radiculitis bilaterally.

5. Post-traumatic cervical, dorsal and lumbar stain and sprain.
The injuries that [plaintiff] have suffered are the direct result of the motor vehicle accident which occurred on 8/2/01.
[Emphasis added.]
In his June 3, 2004, certification of permanency, the doctor reported:
I was the treating physician for [plaintiff] who sustained injuries in a motor vehicle accident occurring on August 2, 2001. I first examined her on August 18, 2001. During my course of treat[ment,] this patient has complained of and exhibited the following symptoms, signs, conditions, limitations or restrictions, including, but not limited to: neck, back, low back pain and lumbar radiculitis. Diagnostic tests were performed upon this patient including the *238 following: MRI of the lumbar spine performed on February 26, 2002 evidenced bulging annulus fibrosis L5-S1, MRI of the cervical spine performed on October 21, 2002 evidenced cervical disc changes C4-C5, C5-C6. In the course of treating this patient, I have rendered the following diagnoses: lumbar disc L5-S1, cervical spondylosis, post-traumatic myofasciitis, cervical/ dorsal/lumbar strain and sprain, and lumbar radiculitis. In the course of treating this patient, I have recommended therapy, analgesia, and consultations with specialists. I last examined her relating to her injuries on January 27, 2003. It is my opinion to within a reasonable degree of medical certainty that as a result of the motor vehicle accident[,] which occurred on August 2, 2001 that [plaintiff] has sustained a permanent injury which has not healed sufficiently to allow her to function normally and that she will not return to normal function even with ongoing medical treatment. All opinions which I have rendered in this Certification are held to within a reasonable degree of medical certainty. I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements are willfully false, I am subject to punishment.
[Emphasis added.]
Plaintiff was examined for the PIP carrier by Dr. Nathan Zemel on January 9, 2003, approximately a year and a half after the accident. At that time, Dr. Zemel reviewed the objective MRI studies identified by Dr. Dorfner in his reports. During his examination, Dr. Zemel noted objective findings of spasm bilaterally on the upper trapezii muscles. He also noted right-sided sciatic notch tenderness with positive straight leg raising. He concluded that plaintiff sustained cervical and lumbosacral radiculitis, right lumbosacral radiculopathy and that she had attained maximum medical improvement. He found no pre-existing conditions affecting her and thought her prognosis was fair.
The facts that precipitated the motion judge's conclusion that a Polk analysis was required are as follows. Plaintiff was involved in an accident on August 24, 1997, which caused soft tissue injuries to her neck, back, shoulder and left rib. She received conservative physical therapy for approximately three months from Dr. Dorfner. Dr. Dorfner's report of November 20, 1997, shows that while there were cervical and lumbar spasms, there was no disc involvement. That is to say, there was no diagnosis of radiculitis or radiculopathy.
More recently, plaintiff was involved in an automobile accident on January 12, 2003. She denied, during deposition, that she was injured, at that time, although she did receive treatment from Dr. Dorfner for contusions, "cervical/dorsal/lumbar strain and sprain" and "post-traumatic myofasciitis" (muscle inflammation). At the time of this accident, Dr. Dorfner had already concluded the disc involvement arising from the August 2, 2001, accident was permanent with no further treatment helpful. There is no indication that plaintiff's lumbar disc condition was affected by the January 12, 2003, accident, or that that accident aggravated her lumbar radiculitis/radiculopathy. Further, plaintiff has never claimed that the August 24, 1997, injuries were in any way aggravated by the August 2, 2001, accident.
In light of these facts, which we must accept for the purposes of the motion, Dr. Dorfner's opinion that plaintiff sustained permanent injury as a result of the August 2, 2001, accident should have been enough to vault the threshold set forth in N.J.S.A. 39:6A-8(a). In this respect, we now know that all a plaintiff need *239 do to vault that threshold is to prove "by objective clinical evidence, supported by a physician certification, under penalty of perjury, an injury [caused by the subject accident] fitting into one of the six statutorily defined threshold categories." Serrano v. Serrano, 183 N.J. 508, 518, 874 A.2d 1058 (2005). Plaintiff need not show that the injury was "serious," ibid., or had caused "a serious life impact," DiProspero v. Penn, 183 N.J. 477, 506, 874 A.2d 1039 (2005).
Here, plaintiff claims a "permanent injury within a reasonable degree of medical probability...." N.J.S.A. 39:6A-8(a). A permanent injury is shown, within the meaning of the statutory threshold requirement, when plaintiff's evidence proves that "the [injured] body part ... has not healed to function normally and will not heal to function normally with further medical treatment." Ibid.
Plaintiff's evidence here, including Dr. Dorfner's reports, the diagnostic tests that have been performed, the doctor's physical examinations and resulting findings, and plaintiff's deposition testimony describing the impact of the injury upon her,[3] establish that the August 2, 2001, accident caused an injury to her back which "has not healed to function normally and will not heal to function normally."
We, then, turn to the Polk issue and dispose of it rather quickly. Polk v. Daconceicao, supra, 268 N.J.Super. 568, 634 A.2d 135, was decided pre-AICRA. In Ostasz v. Howard, 357 N.J.Super. 65, 813 A.2d 1258 (App.Div.2003), another panel of this court agreed with the trial judge that the comparative analysis requirement Polk had engrafted onto the pre-AICRA verbal threshold standard survived AICRA. That panel wrote:
We are in substantial agreement with the underlying principle of decision and with its application to the case at hand. We have already ruled that the requirements and approaches of Oswin v. Shaw, 129 N.J. 290, 609 A.2d 415 (1992), continue to govern the application of verbal threshold standards under AICRA. See James v. Torres, 354 N.J.Super. 586, 590-96, 808 A.2d 873 (App.Div.2002) [, certif. denied, 175 N.J. 547, 816 A.2d 1049 (2003)]; see also Rios v. Szivos, 354 N.J.Super. 578, 580, 808 A.2d 868 (App.Div.2002). The reasoning which informed our opinions in James and Rios regarding the Legislature's design applies to the question raised in this appeal, even more compellingly given the nature of the precise issue before us herein.

With the adoption of AICRA and its revised formulation of the verbal threshold, it was logical that a plaintiff would arguenotwithstanding the legislative statement that nothing therein "was intended to repeal otherwise applicable case law," Statement, S.B. 3, 1998 Leg. 208th Sess. (N.J.1998)that because the verbal threshold had been substantively modified, the standards for defining or determining the character of the qualifying injury needed to be re-addressed as well. The same notion does not apply to the comparative analysis requirement of Polk, however, because that case dealt exclusively with process as distinguished from substance. Nothing in the language or history of AICRA suggests a legislative aim to modify the proof requirements for a verbal threshold case. Indeed, the legislative statement quoted above bespeaks a contrary intendment.

*240 [Id. at 67, 813 A.2d 1258 (emphasis added).]
We now know that the statement in Ostasz v. Howard, supra, 357 N.J.Super. at 67, 813 A.2d 1258, that the "requirements and approaches" of Oswin v. Shaw, supra, 129 N.J. 290, 609 A.2d 415, "continue to govern the application of verbal threshold standards under AICRA," is not correct. DiProspero v. Penn, supra, 183 N.J. at 506, 874 A.2d 1039; Serrano v. Serrano, supra, 183 N.J. at 518, 874 A.2d 1058. In light of those decisions, it is doubtful whether Polk and its progeny continue to be viable in the context of a verbal threshold summary judgment motion. The Ostasz panel thought that Polk is distinct because "that case dealt exclusively with process as distinguished from substance." Ostasz v. Howard, supra, 357 N.J.Super. at 67, 813 A.2d 1258. We do not understand what that means. The comparative analysis required by Polk is an element of causation. In that respect, N.J.S.A. 39:6A-8(a) governs non-economic loss "as a result of bodily injury, arising out of the ownership, operation, maintenance or use" of a vehicle. In our view, the comparative analysis requirement of Polk and its progeny engrafts an additional element upon this causation aspect of the verbal threshold standard. We recognize that another panel apparently views Polk has having continued viability in the context of verbal threshold summary judgment motions. See Lucky v. Holland, 380 N.J.Super. 566, 883 A.2d 419 (App.Div.2005). We do not agree.
Moreover, Polk involved a claim for aggravation of preexisting conditions. In that context, some comparative analysis would be necessary to prove the aggravation, at the least at the time of a jury trial. Here there is no such claim. To the extent Bennett v. Lugo, 368 N.J.Super. 466, 847 A.2d 14 (App.Div.), certif. denied, 180 N.J. 457, 852 A.2d 193 (2004), requires the analysis "whether aggravation of prior injury is alleged or not," id. at 473, 847 A.2d 14, we disagree.
In any event, while Dr. Dorfner does not, in his reports, compare the three accidents and their injuries, we are satisfied that a reasonable factfinder does not need him to opine that the August 2, 2001, accident uniquely caused a disc involvement that is permanent and distinct from the August 24, 1997, soft-tissue injuries and the January 12, 2003, soft-tissue injuries. Whether a jury will agree is not for us to say.
Reversed and remanded for further proceedings consistent with this opinion.
NOTES
[1] Judge Weissbard did not participate in oral argument. However, with the consent of counsel he has joined in this opinion. R. 2:13-2(b).
[2] Polk v. Daconceicao, 268 N.J.Super. 568, 634 A.2d 135 (App.Div.1993).
[3] During her deposition, plaintiff testified as to an impact upon her ability to work and upon her everyday activities that she did not have prior to the August 2, 2001, accident.