885 A.2d 24 (2005)
381 N.J. Super. 129
Wilbert Bernard HARDISON, Plaintiff-Appellant,
v.
Michael D. KING and Diane C. Condron, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Submitted October 12, 2005.
Decided November 2, 2005.
*25 Frank P. Beninato, Jr., Elizabeth, attorney for appellant (Danny Matrafajlo, of counsel and on the brief).
Kramkowski, Lynes, Fabricant & Bressler, attorneys for respondents (Patrick D. Heller, of counsel and on the brief).
Before Judges KESTIN,[1] LEFELT and R.B. COLEMAN.
The opinion of the court was delivered by
LEFELT, J.A.D.
Plaintiff, Wilbert Bernard Hardison, appeals from the motion judge's summary judgment dismissing his automobile negligence complaint under N.J.S.A. 39:6A-8(a), the limitation on lawsuit threshold, because plaintiff failed to comply with the comparative analysis required in Polk v. Daconceicao, 268 N.J.Super. 568, 634 A.2d 135 (App.Div.1993). Plaintiff argues the Polk analysis was not required because his permanent injuries were solely caused by the subject automobile accident and he did not assert aggravation of the minor injuries he suffered approximately nine and ten years ago. We agree and reverse and remand.
Here are the facts from plaintiff's perspective. The most recent accident occurred on June 3, 2002, when plaintiff was rear-ended by defendants. Plaintiff sustained a whiplash injury to the neck and low back when his left leg hit the dashboard and his head hit the steering wheel. He briefly lost consciousness and was taken to Rahway Hospital for emergency treatment.
Plaintiff had two prior automobile accidents between 1991 and 1993. In the first, plaintiff was "broadsided" by a van resulting in injuries to his head, neck, and back. Plaintiff stated that he underwent physical therapy and "no one ever mentioned" any herniations or bulges in his neck or back from that accident.
In 1993, plaintiff was involved in another automobile accident when he was hit "hard" from the rear. Plaintiff injured his neck and back and was examined at Pitt Memorial Hospital immediately thereafter. He testified in depositions that he was treated by his family doctor for this accident, may have had an MRI, and did receive physical therapy.
After the most recent June 3, 2002 rear end collision, which rendered his vehicle inoperable, plaintiff was treated in the emergency room of Rahway Hospital. X-rays of the lumbrosacral and cervical spine were taken and were normal except "[m]arginal osteophytes [were] seen at C4-5 and C5-6." Plaintiff was given a soft collar, motrin for pain and inflammation, and released with instructions.
After being released from the hospital, plaintiff was treated by Dr. Lipovsky with *26 physical therapy three times a week and a course of oral analgesics for pain. Because the pain persisted in the cervical and lumbar spine, Dr. Lipovsky ordered magnetic resonance image (MRI) scans, electromyogram (EMG) tests, and nerve conduction studies (NCS) of plaintiff's cervical and lumbar paraspinals and upper and lower extremities.
Dr. Brownstein, a board certified radiologist, determined that the MRI of the cervical and lumbar spines revealed "a focal disc herniation, with adjacent spondylitic change," at C4-5 and a "broad-based protruded disc herniation noted posteriorly" at L5-S1. The NCS and EMG tests revealed findings consistent with cervical radiculopathy.
Dr. Lipovsky recommended that plaintiff continue with home therapy and consult with a pain management specialist and neurosurgeon. In accordance with these instructions, plaintiff saw Dr. Fersel, a pain management specialist. Dr. Fersel began treating plaintiff with lumbar epidural steroid injections to reduce pain.
In July 2004, plaintiff was examined by defendant's expert, Dr. Bercik. Dr. Bercik interpreted the MRI study as showing disk bulging at L5-S1 and disk space desiccation and bulging at all levels, C2-3 through C6-7. Dr. Bercik also reported that plaintiff had disclosed that though he had previously injured his neck and back in prior motor vehicle accidents, "he did not have any problems" with those parts of his body before the 2002 automobile accident.
Plaintiff's disclosure to Dr. Bercik regarding his recovery from the prior injuries was supported by other evidence in the summary judgment record. Plaintiff's interrogatories stated that he had no "previous injury, disease, illness or condition," that was "aggravated, accelerated or exacerbated" by the automobile accident. Dr. Fersel's report indicated that plaintiff "had physical therapy for his back and shoulders [and] made a complete recovery" from the prior motor vehicle accidents. It was Dr. Fersel who had certified that plaintiff "has sustained permanent injury that will have permanent residual sequelae," "resulting from an [automobile] accident of June 3, 2002." See N.J.S.A. 39:6A-8(a) (requiring that within 60 days of defendants' answer, plaintiff's physician certify that plaintiff has sustained a qualifying injury).
Dr. Lipovsky reported that plaintiff "suffers from severe damage of vertebral column, nerve root sleeves with permanent functional residual disability and limitations." Additionally, Dr. Lipovsky noted, that "plaintiff's history is remarkable for previous injuries sustained in [motor vehicle accidents] in 1991 and 1993." But the doctor found that within a "reasonable degree of medical certainty" plaintiff's injuries "were caused by the accident of 6/3/02" and his prognosis was "poor."
At the oral argument for defendants' summary judgment motion, defendants conceded that "the objective prong [see Oswin v. Shaw, 129 N.J. 290, 319, 609 A.2d 415 (1992)] had been met given the positive MRI and EMG findings." However, defendants insisted that because plaintiff failed to address the Polk comparative requirements, they were entitled to summary judgment. Plaintiff, in response, argued that the previous accidents were remote, and although he did recall suffering some injury at the time, they were minor in nature, and he had fully recovered before the June 3, 2002 accident, as noted by Dr. Fersel. The motion judge applied Polk, granted defendants summary judgment dismissing plaintiff's complaint, and this appeal followed.
*27 Although a part of this court has previously found in Ostasz v. Howard, 357 N.J.Super. 65, 67, 813 A.2d 1258 (App.Div.2003) that Polk remains viable after the 1998 Automobile Insurance Cost Reduction Act (AICRA), N.J.S.A. 39:6A-1.1 to -35, there appears to be a developing controversy surrounding this finding in the wake of the Supreme Court's recent elimination of the serious impact, second prong requirement of Oswin, supra, 129 N.J. at 318, 609 A.2d 415. See DiProspero v. Penn, 183 N.J. 477, 506, 874 A.2d 1039 (2005), and see Serrano v. Serrano, 183 N.J. 508, 517-18, 874 A.2d 1058 (2005). The elimination of Oswin's second prong undercut most, if not all, of Polk's justification, to connect causally a plaintiff's complaints of serious impact to the subject accident rather than to prior accidents or conditions. Polk, supra, 268 N.J.Super. at 575-76, 634 A.2d 135.
Just a few weeks ago, another part of this court disagreed specifically with the Ostasz conclusion "that the comparative analysis requirement [of] Polk ... survived AICRA." Davidson v. Slater, 381 N.J.Super. 22, 27-29, 884 A.2d 235 (App.Div.2005). The Davidson court also disagreed with Lucky v. Holland, 380 N.J.Super. 566, 570, 883 A.2d 419 (App.Div.2005), in which another part of this court applied Polk in a post-AICRA case, thereby impliedly recognizing the doctrine's "continued viability in the context of verbal threshold summary judgment motions." Davidson, supra, at 29, 884 A.2d 235.
The Davidson panel concluded: "the comparative analysis requirement of Polk and its progeny engrafts an additional element upon [the statutory causation requirements] of the verbal threshold standard" that is no longer tenable. Ibid. The panel acknowledged that when "aggravation of preexisting conditions" is alleged, "some comparative analysis would be necessary to prove the aggravation, at the least at the time of a jury trial." Id. at 29, 884 A.2d 235. But "[t]o the extent Bennett v. Lugo, 368 N.J.Super. 466, 847 A.2d 14 (App.Div.), certif. denied, 180 N.J. 457, 852 A.2d 193 (2004), requires the [Polk] analysis `whether aggravation of prior injury is alleged or not,' id. at 473, 847 A.2d 14, we disagree." Id. at 29, 884 A.2d 235.
We need not enter the fray completely as, in this case, we are not dealing with the aggravation of a prior injury or condition. Here, we consider only plaintiff's claim that the permanent injury was caused by the last automobile accident because the prior injuries were completely healed and asymptomatic before that accident.
Support for extending Polk to non-aggravation claims is based upon the Bennett Court's dictum that Polk applies to previous injuries, "whether aggravation of the prior injury is alleged or not." Bennett, supra, 368 N.J.Super. at 473, 847 A.2d 14. We agree with Davidson, and disagree with the extension of Polk to cases like this one where plaintiff contends that he has incurred a permanent injury resulting solely from the subject automobile accident.
Polk itself was an aggravation case. There, plaintiff argued "he suffered a lumbosacral strain and sprain and aggravated a pre-existing permanent hip injury and a right hip arthritic condition," that qualified his injury under the verbal threshold. Polk, supra, 268 N.J.Super. at 570, 634 A.2d 135.
Bennett involved a case where the controlling medical report, which incidentally was found to comply with Polk, opined that plaintiff had sustained "a recurrence of his disc herniation" that had been repaired surgically eight years before. Bennett, supra, 368 N.J.Super. at 474-75, 847 A.2d 14. Thus, Bennett involved an aggravation of a *28 prior condition, and its discussion of non-aggravation cases was dictum.
Bennett supported the extension of Polk to non-aggravation cases with citations to Sherry v. Buonansonti, 287 N.J.Super. 518, 671 A.2d 606 (App.Div.1996), and Loftus-Smith v. Henry, 286 N.J.Super. 477, 669 A.2d 852 (App.Div.), certif. denied, 144 N.J. 588, 677 A.2d 760 (1996). Bennett, supra, 368 N.J.Super. at 473, 847 A.2d 14. In Sherry, three months after the subject automobile accident, plaintiff had another automobile accident and re-injured the same body parts. Sherry, supra, 287 N.J.Super. at 520-21, 671 A.2d 606. We held that plaintiff failed to meet both of the Oswin requirements, Sherry, supra, 287 N.J.Super. at 521, 671 A.2d 606, and added in dictum, "[t]here was [also] no comparative analysis which could attribute plaintiff's present condition to either or both of the two accidents as required by Polk." Id. at 522, 671 A.2d 606. There is no indication whatsoever in Sherry that the court found Polk applicable in non-aggravation cases.
In Loftus-Smith, plaintiff's most recent automobile accident occurred less than two years after a previous accident. Supra, 286 N.J.Super. at 490, 669 A.2d 852. Plaintiff claimed, at least in part, "that the more recent accident aggravated her previously existing lower back condition." Ibid. We found that "since plaintiff sustained similar injuries in a prior accident for which she had received treatments until approximately two months before [the subject accident], she was required [under Polk] to submit competent proofs comparing the two accidents." Id. at 491, 669 A.2d 852. Again, there is no indication the Loftus-Smith court found Polk applicable in a non-aggravation case. There are no other cases that could even arguably stand for the proposition that Polk applies in a non-aggravation situation.
Under AICRA, to vault the limitation on the right to claim damages for noneconomic loss contained in the verbal threshold, plaintiff must show that "as a result of bodily injury, arising out of the ... operation... or use of" an automobile, plaintiff has "sustained a bodily injury which results in" one of the specifically mentioned categories of serious injury. N.J.S.A. 39:6A-8(a). In this case, the relevant category of serious injury is "a permanent injury within a reasonable degree of medical probability." Ibid. The statute considers an injury permanent "when the body part or organ, or both, has not healed to function normally and will not heal to function normally with further medical treatment." Ibid.
Under this standard, therefore, plaintiff must show that he or she sustained a permanent bodily injury as a result of the automobile accident. Any permanent injury suffered by plaintiff must be causally connected to the automobile accident.
The motion judge, in addressing defendants' summary judgment application, granted the motion "primarily on the lack of a Polk analysis." The judge concluded that though Dr. Fersel believes the patient has made a complete recovery, "he hasn't performed any analysis whatsoever in his... report that would give the defense a better understanding of exactly what the [prior] injuries were; how were they diagnosed; whether they were objectively confirmed; whether there was any treatment; whether they went to completion in terms of full recovery or not."
The questions posed by the motion judge may become of concern during trial, depending on the proofs, but they represent an expansion of plaintiff's obligations under normal summary judgment requirements. Significantly, by making the motion in this case, defendants were in essence asserting that there were no factual *29 disputes and plaintiff would be unable to establish that any permanent injury was caused by the 2002 automobile accident. Viewing the record from plaintiff's perspective and according him all reasonable inferences that can be drawn from the facts, as we must under Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540, 666 A.2d 146 (1995), we conclude that a factual dispute is present on the critical question.
The evidence supported plaintiff's position that, although he suffered injuries to the same body parts as those injured in the automobile accident, the prior accidents were nine and ten years prior, the injuries were minor, completely resolved, and asymptomatic at the time of the 2002 automobile accident. Under these circumstances, plaintiff's showing was sufficient to raise a factual dispute as to whether the disc herniations were caused solely by the 2002 automobile accident, as his treating physicians reported.
We do not necessarily agree with Davidson that after AICRA, DiProspero, and Serrano, comparative evidence would never be required in a non-aggravation case. In our view, the need for plaintiff to oppose summary judgment with comparative evidence when aggravation is not being claimed should not depend on any automatic application of Polk. Instead, the necessity for comparative evidence should depend upon whether the factual construct presented by the moving papers calls into question whether any reasonable jury could find that plaintiff incurred a permanent injury resulting from the subject automobile accident.
On appeal of summary judgment motions, we decide first whether there was a genuine issue of fact. If there was, then summary judgment was improperly granted. If there was not, we then decide whether the lower court's ruling on the law was correct. Prudential Prop. & Cas. Ins. v. Boylan, 307 N.J.Super. 162, 167, 704 A.2d 597 (App.Div.), certif. denied, 154 N.J. 608, 713 A.2d 499 (1998).
In this case, plaintiff had established a genuine issue of fact relating to whether his injuries were permanent and caused by the subject automobile accident, and therefore the trial judge erroneously granted summary judgment to defendants.
Even though the motion judge did not decide whether plaintiff met Oswin's first prong, defendants conceded at oral argument that plaintiff established permanency by objective medical evidence. Therefore, in addition to reversing the grant of summary judgment, we return the matter for trial.
Reversed and remanded for further proceedings.
NOTES
[1] Judge Kestin, not originally assigned to hear this case, has joined in its consideration and in this opinion.